**UNITE NATIONAL RETIREMENT FUND, f/k/a/ I.L.G.W.U. National Retirement Fund, Plaintiff,**

v.

**ARIELA, INC., and Pepper Club, Inc., Defendants.**

**No. 06–CV–0055 (BSJ).**

United States District Court, S.D. New York.

June 25, 2008.

---

David C. Sapp, Jr., Amalgamated Life Insurance Company, White Plains, NY, for Plaintiff.

Joseph Lee Matalon, for Defendants.

### *Order*

BARBARA S. JONES, District Judge.

Defendants Ariela, Inc. and Pepper Club, Inc., (collectively "Defendants") have moved to dismiss the complaint in the above-captioned case for insufficiency of service or, alternatively, to stay the action. For the following reasons, Defendants' motion is denied.

### I. Facts and Procedural Background

On December 14, 2004, plaintiff UNITE National Retirement Fund ("Plaintiff"), an employee benefit fund, commenced a prior action, captioned *UNITE National Retirement Fund v. Ariela, Inc., et al.* (Civil Case No. 04–cv–9869)("the first Ariela action"), seeking to compel defendants Lee Ades ("Ades"), Ariela Incorporated ("Ariela"), Veranda Marketing Company ("Veranda"), Ariela USA, Inc. ("Ariela USA"), Pepper Club, Incorporated ("Pepper Club"), and Sugarmill Clothing Corporation ("Sugarmill") to pay withdrawal liability pursuant to Sections 4201 through 4225 and 4301 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381 through 1405 and 1451. While Plaintiff successfully served the other defendants in this action [1], Plaintiff was initially unable to serve Ariela and Pepper Club. Accordingly, the first Ariela action was dismissed without prejudice solely as to Ariela and Pepper Club for failure to effect service within the time limits set forth in Rule 4(m) of the Federal Rules of Civil Procedure.

On January 4, 2006, Plaintiff filed the instant action against defendants Ariela and Pepper Club, asserting the claims for the withdrawal liability originally asserted in the first Ariela action. By letter dated April 27, 2006, counsel for Plaintiff advised the Court that it believed service on Ariela and Pepper club to be impracticable and requested a 30 day extension in which to permit Plaintiff to make a motion for an order permitting an alternative method of service of process. (*See* Sapp. Decl., Ex. A). That extension was granted and on

---

**1.** Plaintiff served the summons and complaint on defendant Ariela USA by personal service on the New York Secretary of State and on defendant Sugarmill by personal service on its Florida registered agent. Ariela USA interposed its answer on April 7, 2005 and Sugarmill interposed its answer on April 18, 2005. Plaintiff served defendant Lee Ades individually and on behalf of Veranda, a sole proprietorship owned by Ades, by "leave and mail service" at Ades's business address. Defendants Ades and Veranda each moved to dismiss Plaintiff's complaint for insufficiency of service pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. However, in a separate Order dated June 24, 2008, 643 F.Supp.2d 326 (S.D.N.Y.2008), the Court denied those motions, finding that service was proper.

June 2, 2006, Plaintiff filed its Motion for Alternative Service with the Court. On June 16, 2006, the Court denied Plaintiff's Motion for Alternative service and directed Plaintiff to serve Defendants in a manner allowed under either the Hague Convention or the Inter–American Convention on Letters Rogatory. (*See* Order, dated June 16, 2006).

On June 20, 2006, Plaintiff attempted to serve Ariela and Pepper Club in Mexico via international registered mail which Plaintiff contends is permitted by Article 10(a) of the Hague Convention. Copies of the Summons and Complaint were mailed via international registered mail, return receipt requested, to the defendants, care of Lee Ades, at what Plaintiff believed to be Ades's home and work addresses in San Miguel de Allende, Guanajuato Mexico.[2] In August 2006, each of the packages sent to the defendants at Ades's purported work and home addresses were returned By the United States Postal Service. Each of the packages bore annotations of the Mexican postal authorities stating, "ausente" and "Se Ausento Del Domicilio Citado," which roughly translated means "absent" and "absent from the above address." (See 09/01/06 Sapp. Decl. ¶ 19). Defendants Ariela and Pepper Club contend that such service is not valid under

the Hague convention and on July 31, 2006, they jointly filed a motion to dismiss pursuant to Rule 12(b)(5) for insufficiency of service.[3]

While this motion to dismiss was pending, Plaintiff, through Legal Language Services, Inc., a United States Company specializing in service of process abroad, transmitted English and Spanish language translations of the summonses and complaints to the United States of Mexico's Central Authority in the Mexican Foreign Ministry offices in Mexico City, D.F. ("the Central Authority"). The Central Authority transmitted those documents to the Judicial Branch of the State of Guanajuato.[4] The Central Office of Process Servers of the Judicial District of Guanajuato designated Licentiate Maria del Pilar Aguilar Torres, a court clerk, to serve the summonses and complaints on the defendants. Torres returned certificates of service which set forth the steps she took to effect service on defendants.

Except where otherwise noted, the following facts are taken from Torres' statements which are a part of the Affidavits of Service filed by Plaintiff.[5] On August 14, 2006 Torres traveled to Estancia de Canal, the community in which defendant Ades resides and works. Torres confirmed that

---

2. The home address used for Ades was the address Ades had confirmed to be his home address in his Declaration in Opposition to the Motion for Alternative Service. (See Ades's Decl., dated ¶ 2). The work address used for Ades was the address in Mexico identified on Ades's personal federal income tax returns produced to Plaintiff by Ades's accountant. (See 09/01/06 Sapp. Decl. ¶ 18).

3. Defendants alternatively claim that this registered mail service was untimely under Rule 4(m) because it was not effected within 120 days from the filing of the complaint. However, in *Ackermann v. Levine*, the Second Circuit held that service pursuant to the Hague Convention need not meet the requirements of Rule 4. 788 F.2d 830, 840 (2nd

Cir.1986)(stating that "the convention 'supplements'—and is manifestly not limited by—Rule 4."). Additionally, Rule 4m provides that the 120 day period does not apply to service in a foreign country pursuant to 4(f). *See* Fed.R.Civ.P. 4(m).

4. Ades lives and works in a rural community in Mexico known as Estancia de Canal which is near the town of San Miguel de Allende in the State of Guanajuato. (*See* Ades Decl. ¶).

5. Torres actually prepared four handwritten statements relating to the events of August 14, 2006 and four relating to August 15, 2006. Although certain details differ, the August 14 and August 15 statements, respectively, are essentially consistent with one another.

she was in the right place by observing an official street sign at the end of the highway which showed the name of the community and by speaking with an adult female who advised Torres that Mr. Ades is "well known since he is the owner of a large part of the ranch" known as Estancia de Canal. The woman also noted that Ades was married to the only doctor on the ranch. (Defendants point out that, in fact, Ades is not married to a doctor. *See* Ades Decl. ¶ 7). The woman then directed Torres to Mr. Ades' house.

As Torres was proceeding to Ades's house, she met Rafael Cardenas, an architect employed by Ades. Cardenas told Torres that Ades was his employer and that Ades was not in the Estancia de Canal area that day, but rather, was working in another community called Rancho Quinta San Miguel. Torres told Cardenas that she had important papers for Ades. Cardenas then called Ades via radio. Torres claims to have overheard Ades tell Cardenas to tell Torres to go to Rancho Quinta San Miguel to meet Ades or if Torres was bringing something for Ades to leave it with Cardenas. Torres specifically claims that she heard Ades say that it was acceptable for Torres to leave the summons with Cardenas. Torres claims that she prepared the summonses for Ades on behalf of Ariela and Pepper Club. The summonses directed Ades to meet Torres at his residence between 8:00 a.m. and 8:45 a.m. the following morning. Torres claims she left the summonses with Cardenas. Cardenas, however, denies having received any documents from Torres. (Cardenas Aff. ¶ 3; Ades Decl. ¶ 5).

At approximately 8 a.m. on August 15, 2006, Torres arrived at Ades's residence in Estancia de Canal. After approximately ten minutes, the masons working at the Ades house told Torres that Ades had left shortly before her arrival but that she could go see if there was someone in the house. Torres approached the "wire door" and saw a man on the other side. The man told Torres that he could not let her in and that he was under strict orders not to provide any information or receive any documents. Thereafter, Torres affixed the Rogatory letters, summonses and copies of the complaints on the "wire door that accesses the house of Lee Ades." Ades, for his part, contends that he did not receive any documents from any of his employees and that none were affixed to the door of his house or any gate leading to his house. (Ades Decl. ¶¶ 5–6).

On October 4, 2006, the Central Authority of the United States of Mexico returned certificates of service verifying that service had been effected under the Hague Convention on Ades on behalf of Ariela and Pepper Club. These certificates of service were thereafter filed with the Clerk of the Court of the Southern District of New York

Defendants Ariela and Pepper have moved to dismiss on the grounds that this service fails to comply with the requirements under the Hague Convention or, in the alternative, request that this Court stay these proceedings pending the prosecution of a "nullification" proceeding in Mexico.

## II. Discussion

■ Service of the summons and complaint in a federal action is governed by Rule 4 of the Federal Rules of Civil Procedure. Rule 4(h)(2) of the Federal Rules of Civil Procedure provides that service upon a Corporation outside of the United States may be made in accordance with Rule 4(f), which permits service of process upon an individual abroad "by any internationally agreed upon means reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed.R.Civ.P 4(f)(1); *see also* Fed.R.Civ.P 4(h)(2). Here, both Mexico and the United States

are signatories to the Hague Convention, and thus, service of process on the Defendants in Mexico must conform to the requirements of the Hague Convention. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 705, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988)("[C]ompliance with the Hague Convention is mandatory in all cases to which it applies.").

The Hague Convention authorizes several different mechanisms for effectuating service of process. The primary vehicle, established in Articles 2 through 7, requires each participating country to set up a Central Authority for receiving and processing requests for service upon defendants residing within the state. *See* Hague Convention, Art. 2–7; *see also Schlunk,* 486 U.S. at 699, 108 S.Ct. 2104. Under this method, an applicant must send a request for service directly to the Central Authority designated by the government of the receiving country, who then serves the document or arranges to have it served by the appropriate agency. Hague Convention, Art. 2–5. The Central Authority must then complete a Certificate detailing how, where, and when service was made, or explaining why service did not occur. *Id.* Art. 6. Finally, the completed Certificate is returned to the applicant. *Id.* Once the service is completed, the Central Authority completes a certificate as to whether service was made or not and will return the certificate to the applicant. *Id.,* Art. 5.

■ However, "service through the member state's Central Authority is not the exclusive method of service under the Hague Service Convention." *See, e.g., Arista Records LLC v. Media Services LLC,* No. 06 Civ. 15319, 2008 WL 563470, *1 (S.D.N.Y., Feb. 28, 2008). Here, Plaintiff initially attempted service pursuant to Article 10 of the Convention which provides for alternate forms of service, including service of process by-mail,[6] in the absence of any objection by the state of destination, in this case Mexico. *See* Hague Convention, Art. 10; *see also, Ackermann v. Levine,* 788 F.2d 830, 839 (2d Cir.1986).[7] With respect to article 10 of the Hague Convention, Mexico made the following declaration:

"In relation to Article 10, the United Mexican States are opposed to the direct service of documents through diplomatic or consular agents to persons in Mexican territory according to the procedures described in sub-paragraphs a), b), and c), unless the judicial authority exceptionally grants the simplification different from the national regulations and provided that such a procedure does not contravene public law or violate individual guarantees. The request must contain the description of the formalities

**6.** Although some Courts dispute that Article 10(a) allows for service of process by mail, the Second Circuit has held that 10(a) of the Hague Convention permits service of process via postal channels. *See Ackermann v. Levine,* 788 F.2d 830, 839 (2d Cir.1986).

**7.** Article 10 of the Hague Convention states: "Provided the State of destination does not object, the present Convention shall not interfere with—
"(a) the freedom to send judicial documents, by postal channels, directly to persons abroad,

"(b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
"(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persona of the State of destination."
Hague Convention, art. 10.

whose application is required to effect service of the document."

Hague Conference on Private International Law, Declarations–Mexico.

Defendants contend that this declaration regarding Article 10 evidences Mexico's categorical objection to service via postal channels. However, on its face, the language of the declaration restricts its objection to service through "diplomatic or consular agents." Thus, the declaration by Mexico regarding article 10 addresses only direct service of documents through diplomatic or consular agents to persons in Mexican territory. As Mexico has made a declaration regarding Article 10 which does not expressly prohibit or object to service via postal channels, this Court finds that such service is proper under article 10(a) of the Hague Convention.[8]

■ However, Defendants also argue that service here was not proper because the summons and complaint were not actually delivered. Indeed, it is undisputed that the mailings were returned to Plaintiff's counsel's office. However, this defect in service would not be grounds for dismissal absent some showing of prejudice, which has not been made in this case.[9] *Gilliam v. Quinlan*, 608 F.Supp. 823, 829 n. 3 (S.D.N.Y.1985); *Rose v. Koch*, 465 F.Supp. 1157, 1159 (E.D.N.Y.1979); *see* 5B Wright & Miller, Federal Practice and Procedure §§ 1353, 1354. Rather, "the general rule in [the Second] Circuit is that

... such process is quashed and the action is preserved provided there is a reasonable prospect that plaintiff will ultimately be able to serve the defendant properly." *Modern Computer Corp. v. Ma.*, 862 F.Supp. 938, 946 (E.D.N.Y.1994)(citing *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir.1985)).

■ Regardless, such measures are not required here because the Court finds that Plaintiff additionally complied with the Hague Convention by transmitting copies of the Summons and Complaint, in English and Spanish translations, and the other required documents to the Central Authority in Mexico. The Central Authority returned a certificate of service to Plaintiff without questioning the validity of service under Mexican internal laws or the Hague Convention.[10] It is well settled that the return of a completed certificate of service by a Central Authority establishes prima facie evidence that the Central Authority's service on Defendants was made in compliance with the convention. *Resource Trade Finance, Inc. v. PMI Alloys, LLC*, 2002 WL 1836818, 4 (S.D.N.Y. Aug. 12, 2002). Defendant nevertheless argues that this service was insufficient because (1) the certificate returned by the Central Authority was not the model form and (2) because the service did not comport with Mexico's internal laws.

**8.** Defendants also argue that service by mail is not permitted under the Hague Convention because it does not comport with the internal law of Mexico concerning service of process. However, this issue is not relevant or dispositive, as Mexico is a signatory to the Hague Convention and has made a declaration regarding article 10 (see, e.g., *International Transactions, Ltd. v. Embotelladora Agral Regionmontana S.A. de C.V.*, 277 F.Supp.2d 654, 657–63 n. 15, (N.D.Tex.2002)).

**9.** Ariela and Pepper Club have suggested no prejudice here. Indeed, this Court has al-

ready found that Ades was properly served with a copy of the complaint in the prior, related action which asserts the same claims as in the instant action.

**10.** The Central Authority's returns of service specifically state that the "First Judicial District of San Miguel de Allende, Guanajuato, returned to this judicial office the affidavit, along with the corresponding letters of instruction and attachments emanating therefrom, and that the requested legal assistance has been executed." (01/25/08 Sapp. Aff., Ex. A).

■ Article 6 of the Hague Convention requires a Central Authority or its designated agent to "complete a certificate in the form of the model annexed to the present Convention." Hague Convention, Art. 6. This model requires the foreign agency to state whether the service occurred or not and to "include the method, the place, and the date of service and the person to whom the document was delivered." *Id.* However, as the Second Circuit has acknowledged, the language of Article 6 does not expressly require the exact form to be filled out, but merely requires a certificate "in the form of the model." *Id.*, *see also Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301 (2d Cir.2005)(holding that a police form was a valid substitute for the formal certificate and stating that to "hold that only the exact form must be used would not only elevate form over substance, but would impose an unreasonably strict degree of compliance with the Hague Convention.").

■ Indeed, the Second Circuit has expressly rejected such formalistic challenges to service of process carried out by a State's Central Authority under the Hague Convention. *Id.* While the Hague Convention "carefully articulates the procedure which a litigant must follow in order to perfect service abroad, ... it does not prescribe the procedure for the forum Court to follow should an element of the procedure fail." *Burda Media*, 417 F.3d at 301. Accordingly, courts have consistently held that the Hague Convention "should be read together with Rule 4, which 'stresses actual notice, rather than strict formalism.'" *Id.* (quoting *Fox v. Regie Nationale des Usines Renault*, 103 F.R.D. 453, 455 (W.D.Tenn.1984)). Thus, where the plaintiff made a good faith attempt to comply with the Convention, and where the defendant received sufficient notice of the action such that no injustice would result, it is within the Court's discretion to deem service of process properly perfected. *Id.*

Thus, the Court finds that the return of these completed certificates of service which were filed with the Court establishes a prima facie case that this service complied with Mexico's internal laws. By not objecting to the documents and by certifying service, the Central Authority indicated that the documents complied with the Convention and that it had served them in compliance with the Convention, i.e., that it had made service as Mexican law required. This Court declines to look behind the certificate of service to adjudicate the issues of Mexican procedural law that the parties have raised through their submission of conflicting expert statements on the issue. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1390 (8th Cir. 1995).

In *Northrup*, the Court likewise declined to "go behind [the] certificate" to find non-compliance with Convention but suggested that the prima facie showing of proper service may be rebutted by lack of actual notice or some showing of prejudice. *Id.* Here, Defendants do not contend that they lacked actual notice or have suffered any prejudice resulting from the service of process by Mexico's Central Authority. Indeed, it is undisputed that Torres, via a conversation with Cardenas and Ades over a radio, conveyed to Ades that she had legal papers for him. Furthermore, Ades has already received the summons and complaint in the prior, related action, asserting the same claims as in the instant action against Ariela and Pepper Club. Accordingly, Defendants here have actual notice of this litigation and thus the ability to defend the claims presented in the Complaint.

■ The Court does acknowledge that Ades affirms that he never received any of

the service documents and that none were affixed to his house or to any gate leading to his house. (Ades Decl. ¶¶ 5, 6). However, the Court finds that the sworn denials of service in this case do not rebut the presumption of proper service established by the process server's affidavit and do not necessitate an evidentiary hearing. After examining the parties' affidavits, the Court finds that Defendants have failed to sufficiently refute the detailed, sworn statements of the process server in the certificates of service. *See Old Republic Ins. Co. v. Pacific Financial Services of America, Inc.,* 301 F.3d 54, 57–58 (2d Cir.2002)(quoting *Simonds v. Grobman,* 277 A.D.2d 369, 716 N.Y.S.2d 692 (2d Dept. 2000)) ("[N]o hearing is required where the defendant fails to swear to 'specific facts to rebut the statements in the process server's affidavits.'"). While Ades refutes certain collateral facts contained in Torres' statements and he and Cardenas refute that Torres left the summonses with Cardenas on August 14, 2006, the Court finds that Defendants have failed to rebut Torres' sworn statements that she located Ades's home on August 15, 2006, confirmed that Ades was the owner of the house by speaking with several masons working there, and, after a caretaker at the residence refused to accept the documents, affixed the Rogatory letters, Summonses and copies of the Complaint to the access door to Ades's house.

The Court also finds that the interests of justice and the required liberal interpretation of Rule 4, weigh in favor of finding process complete due to Defendants' actual notice of this litigation and receipt of the summons and complaint in the prior action. Service of process is not intended to be a game of cat and mouse. Rather, "[t]he purpose of service of process is to apprise the defendant that suit has been brought against him and to give him an opportunity to defend." *National Equipment Rental, Ltd. v. Szukhent,* 311 F.2d 79, 83 (2d Cir.1962). Here, there is no question that those aims have been fulfilled.

### III. Conclusion

For the reasons set forth in this opinion, the Court finds that Plaintiff has served Defendants pursuant to the Hague Convention and Defendants may no longer avoid defending this action. Accordingly, Defendants' motion to dismiss for insufficient service is DENIED. Defendants' request to stay the action pending a nullification proceeding in Mexico is also DENIED. Defendants are directed to Answer or otherwise appear in this action within 60 days of this ORDER.

This order thus resolves the following motions: documents 13 and 28 in docket number 06–CV–0055.

**SO ORDERED.**