Donna B. **MITCHELL and Robert Hector, Plaintiffs,**

v.

**VOLKSWAGEN GROUP OF AMERICA, INC., Volkswagen Aktiengellshcaft, Volkswagen De Mexico, S.A. de C.V., and The Volkswagen Group, Defendants.**

**Civil Action File No. 1:10–CV–944–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 4, 2010.

Andy Joel Williams, Jr., William Sims Stone, Boone & Stone, Blakely, GA, Antoinette Davis, David William Boone, Simone Rachel Siex, Boone & Stone, Atlanta, GA, for Plaintiffs.

Hugh Brown McNatt, James L. Hollis, James Dartlin Meadows, Balch & Bingham LLP, Atlanta, GA, for Defendants.

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

Before the Court is Defendants Volkswagen Aktiengellshcaft ("VW–Germany"), Volkswagen De Mexico, S.A. de C.V.

("VW–Mexico") and The Volkswagen Group's ("VW–Group") motion to dismiss pursuant Fed.R.Civ.P. 12(b)(5) [8] and Plaintiffs Donna Mitchell and Robert Hector's motion to file a supplemental brief [20].

## I.  Background

VW–Germany is a corporation organized under the laws of the Republic of Germany with its principal place of business in Wolfsburg, Germany.  VW–Mexico is organized under the laws of Mexico with its principal place of business in Puebla, Mexico.  Defendant Volkswagen Group of America, Inc.'s ("VW–America") is a wholly-owned subsidiary of VW–Germany, incorporated in New Jersey with its principal place of business in Herndon, Virginia.

VW–America's registered agent in Georgia is CT Corporation.  However, CT Corporation has never been designated or authorized to accept service of process on behalf of VW–Germany or VW–Mexico.  Also, VW–Germany and VW–Mexico have never authorized or allowed VW–America to hold itself out as an agent authorized to accept service of process on their behalf or to represent that CT Corporation may accept service of process for them.

VW–Group also has its headquarters in Wolfsburg, Germany and is made up of nine automobile brands from seven countries (Volkswagen, Audi, SEAT, Skoda, Volkswagen Commercial Vehicles, Bentley, Bugatti, Lamborghini and Scania).  Plaintiffs contend that VW–Group is an unincorporated association or organization.  VW–Group contends that it does not exist as an independent entity and has no independent existence in either law or fact.  Consequently, it avers that it is not a proper party to this suit.  However, out of caution, it joins the motion to dismiss and incorporates all arguments contained therein.

On April 1, 2010, Plaintiffs filed a products liability suit against Defendants, contending that Defendants' 2005 Volkswagen Beetle had certain safety defects that caused Plaintiffs' son to die in a single-vehicle crash.

On April 2, 2010, Plaintiffs served their complaint upon CT Corporation, VW–America's designated agent for service of process in Georgia.  Plaintiffs attempted to serve their complaint via CT Corporation not only for VW–America[1] but also for VW–Germany and VW–Mexico on the basis that VW–America is an agent of the other Defendants.  However, that same day, CT Corporation advised Plaintiffs that it could not accept service of process for VW–Germany or VW–Mexico because it was not an agent for either of those two entities.

On April 5, 2010, Plaintiffs attempted to serve a copy of the summons and complaint on VW–Germany, VW–Mexico and VW–Group at VW–America's port office located in Brunswick, Georgia.  On April 7, Plaintiffs also mailed copies of the summons and complaint to VW–Mexico's principal place of business in Puebla, Mexico.  Plaintiffs have not translated any of the documents that they have attempted to serve into either German or Spanish.

On April 23, 2010, VW–Germany and VW–Mexico filed a motion to dismiss [8].  The current dispute arises from Plaintiffs' efforts to serve VW–Germany, VW–Mexico, and VW–Group.  Plaintiffs contend that they have properly served VW–Germany, VW–Mexico and VW–Group because they served VW–America, which they aver is an agent or alter ego of the other Defendants.  VW–Germany and VW–Mexico respond that Plaintiffs cannot satisfy the service of process requirements as to them by serving VW–America.  VW–

---

**1.**  VW–America accepted process and filed its answer [6] on April 23, 2010.

Germany also contends that VW–Group is not an entity capable of being sued under Georgia law.

## II. Plaintiffs' Motion to File a Surreply

On July 20, 2010, Plaintiffs filed a motion for leave to file a surreply to the motion to dismiss [20] and their thirteen-page supplemental brief. On July 26, Defendants filed a response in opposition to the motion, as well as a motion to strike the supplemental brief [21], contending that the new authority cited by Plaintiffs is not in fact new, controlling or relevant.

■ The Court should exercise its discretion of allowing surreplies "only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Fedrick v. Mercedes–Benz USA, L.L.C.*, 366 F.Supp.2d 1190, 1197 (N.D.Ga.2005). Plaintiffs fail to demonstrate that a particular argument or representation made by Defendants in their reply warrants a surreply by them. Moreover, even if the brief is considered, VW–Group should still be dropped as a party and Plaintiffs' service on VW–Germany and VW–Mexico should still be quashed. Consequently, the Court will deny Plaintiffs' motion for leave to file a surreply and will deny as moot Defendants' motion to strike.

## III. Legal Status of VW–Group

Plaintiffs contend that Georgia law allows them to sue VW–Group as an unincorporated organization or association. VW–Group responds that it does not exist as an independent entity and has no independent existence in law or fact. It further contends that Georgia law does not permit Plaintiffs to sue it and thereby avoid having to sue the corporations within its putative group.

■ Under Georgia law, a plaintiff may sue an unincorporated organization or association as long as the plaintiff may maintain that suit against the members of the organization or association. O.C.G.A. § 9–2–25(a). The purpose of this statute is to "avoid having to locate a group of individuals in order to file suit in the county where each resides, and to fix a venue in order to bring an action against the association as a whole." *Drake v. Chesser*, 230 Ga. 148, 152, 196 S.E.2d 137, 140 (1973). This stated purpose suggests that the statute is intended to facilitate suing a group of individual persons, not individual corporations.

The cases interpreting the statute also support this conclusion. *See id.* at 149, 195 S.E.2d at 138 (unincorporated association was a laborers union); *Ga. Kraft Co., Woodkraft Div. v. Laborers' Int'l Union of N. Am.*, 170 Ga.App. 581, 587, 317 S.E.2d 602, 608 (1984) (same); *Piney Grove Baptist Church v. Goss*, 255 Ga.App. 380, 382, 565 S.E.2d 569, 571 (2002) (church); *Metzler v. Rowell*, 248 Ga.App. 596, 596, 547 S.E.2d 311, 313 (2001) (grass-roots environmental organization); *Masters v. Air Line Pilots Ass'n, Int'l*, 144 Ga.App. 350, 350, 241 S.E.2d 38, 38 (1977) (air line pilots).

■ Plaintiffs have failed to provide any binding case law to support their contention that this statute was intended to include unincorporated associations comprised of corporations. Indeed, the definition of unincorporated association to which Plaintiffs cite defines it as a "gathering of people for a common purpose." BLACK'S LAW DICTIONARY 141 (9th ed. 2009). Accordingly, the Court finds that O.C.G.A. § 9–2–25 does not permit Plaintiffs to sue VW–Group. VW–Group will be dropped from the case.

## IV. Rule 12(b)(5)

### A. Legal Standard

Pursuant to Fed.R.Civ.P. 12(b)(5), an action must be dismissed for insufficient ser-

vice of process if service is not effected upon the defendant in accordance with Fed.R.Civ.P. 4. Subsection (h) of Rule 4 provides that service in a U.S. judicial district upon a corporation must be made either pursuant to the laws of the state in which the district court is located or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process."

If service is not made within a U.S. judicial district, the corporation must be served according to subsection 4(f), which details serving an individual in a foreign country. Pursuant to subsection 4(f), a corporation in a foreign country may be served by any internationally agreed means of service, such as the Hague Convention. If such an agreement does not exist or if the agreement allows but does not specify other means, then the foreign corporation may be served by a method reasonably calculated to give notice, for example, as prescribed by the foreign country's law for service, as the foreign authority directs or using a form of mail requiring signed receipt unless prohibited by the foreign country's law.

### B. VW–Germany

■■ Plaintiffs contend that VW–Germany was properly served when they served VW–America—VW–Germany's alleged agent or alter ego—with a copy of the summons and complaint. VW–Germany responds that Georgia law does not allow Plaintiffs to effect service by serving a wholly-owned subsidiary that has not been authorized to accept service. VW–Germany, as the party challenging service of process, bears the burden of showing the impropriety. *Ritts v. Dealers Alliance Credit Corp.,* 989 F.Supp. 1475, 1478 (N.D.Ga.1997).

■ As a preliminary matter, Plaintiffs' attempt to serve VW–Germany by serving CT Corporation with a copy of the summons and complaint is insufficient. Under Georgia law, "[n]either Georgia's general service of process statute (O.C.G.A. § 9–11–4) nor the corporate service statute (O.C.G.A. § 14–2–504) authorizes service on an agent of a domestic subsidiary as constituting proper service on the foreign parent corporation." *Rovema Verpackungsmaschinen v. Deloach,* 232 Ga.App. 212, 214, 500 S.E.2d 647, 649 (1998); *accord May v. Volkswagen of Am.,* 125 F.R.D. 521, 522 (N.D.Ga.1989). It is undisputed that CT Corporation is not authorized to accept service of process on behalf of VW–Germany. Accordingly, this method of service on this Defendant was not proper.

Plaintiffs, however, also attempted to serve VW–Germany by serving VW–America's manager of port operations at its ports and vehicle-processing facility in Brunswick, Georgia. This method is also insufficient. In *Deloach,* 232 Ga.App. at 213–215, 500 S.E.2d 647, the court found that it was obvious that the German corporation did not have a registered agent in Georgia, had not designated its wholly-owned subsidiary to accept service of process on its behalf, and that the plaintiff could have served the German corporation pursuant to the Hague convention or O.C.G.A. § 14–2–504. This holding indicates that serving a parent corporation by serving its wholly-owned subsidiary that has not been authorized to accept service of process on behalf of the parent fails to satisfy Georgia law.

In at least one opinion, this Court has agreed. In *Tecon Oil Servs. Ltd. v. Ogbonyomi,* 2006 WL 2947054, at *1–2 (N.D.Ga. Oct. 1, 2006), the foreign corporation moved to dismiss for insufficient service of process where the plaintiff had attempted

to serve the foreign corporation by serving its subsidiary. In granting the foreign corporation's motion to dismiss, the court extended the *Deloach* holding, finding that neither Georgia's general service of process statute nor its corporate service statute authorized service on a domestic subsidiary "so long as [the] Parent had never directed subsidiary or subsidiary's agent to accept service of process on [the] German parent's behalf." *Id. See also Ciprotti v. United Inns, Inc.*, 209 Ga.App. 457, 458, 433 S.E.2d 585, 588 (1993) (finding service on defendant's registered agent insufficient to serve defendant's affiliate and rejecting plaintiff's alter ego argument even though defendant and affiliate shared a mailing address and officers).

The Court finds this is a reasonable extension of the *Deloach* holding and applicable in this case. VW–Germany has submitted an affidavit from its attorney, who testifies that VW–Germany does not have any agents for service of process in the United States and has never appointed VW–America to act as its agent. Accordingly, Plaintiffs have failed to properly serve VW–Germany.

■ However, "the Court has broad discretion to dismiss the action or to quash service but retain the case." *Thermo–Cell Se., Inc. v. Technetic Indus., Inc.*, 605 F.Supp. 1122, 1124 (N.D.Ga.1985); *accord* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1354 (3d ed. 2004). Because VW–Germany is amenable to service of process under the Hague Convention, the Court orders that service be quashed and denies VW–Germany's motion to dismiss.

**C. VW–Mexico**

Plaintiffs also attempted to serve VW–Mexico by serving CT Corporation and VW–America at its port facility on the premise that VW–America is the agent or alter ego of VW–Mexico. VW–Mexico's counsel testified in his affidavit that like VW–Germany, VW–Mexico does not have any agents for service of process in the United States and has never designated VW–America as an agent capable of acting on its behalf. Consequently, for the reasons previously stated, serving CT–Corporation and VW–America is insufficient to serve VW–Mexico.

■ Plaintiffs also sent, via FedEx International Priority, the untranslated summons and complaint to VW–Mexico's president, chief financial officer, or secretary at its principal place of business in Puebla, Mexico. Plaintiffs contend that this method of service was sufficient because it complied with Article 10 of the Hague Convention. VW–Mexico contends that Mexico has objected to Article 10 and that Plaintiffs therefore cannot perfect service by mailing directly to VW–Mexico untranslated copies of the summons and complaint.

The United States and Mexico are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra–Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). The Hague Convention applies in this case because Georgia law requires the transmittal of the summons and complaint abroad, as VW–Mexico has not authorized an agent to accept service of process in Georgia. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). The general method of service provided for in the Hague Convention requires Plaintiffs to send documents to Mexico's designated central authority, which then serves the documents according to its own law. *Id.* at 698–99, 108 S.Ct. 2104 (quoting Articles 2 and 5 of the Hague Convention). Article 10(a), however, provides an exception to this procedure and allows parties "to send judicial documents, by postal channels, directly to persons abroad."

The Circuits have split on whether Article 10(a) permits service of process by mail, and the Eleventh Circuit has not yet addressed the issue. *See Lobo v. Celebrity Cruises,* 667 F.Supp.2d 1324, 1338 (S.D.Fla.2009) (discussing how some circuits find the word "send" does not encompass service of process while other circuits find that it does and noting that the Eleventh Circuit has not addressed the issue); *accord Schiffer v. Mazda Motor Corp.,* 192 F.R.D. 335, 337 (N.D.Ga.2000). Further complicating matters is the fact that countries can object to Article 10(a) and thereby avoid service of process via postal channels. Thus, if a country has objected, Article 10(a) does not apply and the arguments regarding its scope are moot. *See DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 288 (3d Cir.1981) (the Hague Convention "allows service to be effected without using the Central Authority as long as the nation receiving service has not objected to the method used."); *see also* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 471 cmt. e (1987) ("[F]or states that have objected to all of the alternative methods, service through the Central Authority is in effect the exclusive means.").

VW–Mexico contends that Mexico has objected to Article 10(a) and that service upon it via direct mail therefore is not proper. In support of its argument, VW–Mexico relies on the U.S. Department of State's travel website. *See* U.S. DEPARTMENT OF STATE, *International Judicial Assistance Mexico,* http://travel.state.gov/law/judicial/judicial_677.html# service (last visited Oct. 4, 2010). Plaintiffs respond that the value of this source is dubious in light of the disclaimer that information may not be totally accurate and the fact that the U.S. Marshal's Service website (which also has a disclaimer) does not indicate that Mexico has objected to Article 10(a). *See* U.S. MARSHALS SERVICE, *Service of Process: Hague Convention on the Service Abroad,* http://www.usmarshals.gov/process/hague_service.htm (last visited Oct. 4, 2010). Before addressing the scope of Article 10, it is necessary to determine whether Article 10(a) even applies to service upon parties located in Mexico.

The Court first looks to the translated version of Mexico's objection to Article 10. According to the Hague Convention website, Mexico is "opposed to the direct service of documents through *diplomatic or consular agents* to persons in Mexican territory according to the procedures described in sub-paragraphs a), b), and c) ...." HAGUE CONFERENCE ON INTERNATIONAL LAW, *Declarations of United Mexican States,* http://www.hcch.net/index_en.php?act=status.comment&csid=412&disp=resdn (last visited Oct. 4, 2010) (emphasis added). The State Department website, upon which VW–Mexico relies, interprets Mexico's objection to Article 10 as prohibiting service via postal channels on all persons, not just diplomatic or consular agents. However, on a different page within the same website, the State Department does not include Mexico in the list of countries where service by registered mail should not be used. *See* U.S. DEPARTMENT OF STATE, *Service of Legal Documents Abroad,* http://travel.state.gov/law/judicial/judicial_680.html# mail (last visited Oct. 4, 2010).

Courts seeking to interpret the objection have also disagreed on its scope. *Compare Unite Nat'l Ret. Fund v. Ariela, Inc.,* 643 F.Supp.2d 328, 334 (S.D.N.Y.2008) (finding service via postal channels to a defendant located in Mexico proper because Mexico's objection to Article 10 did not expressly prohibit or object to such service unless through diplomatic or consular agents); *Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana S.A. de C.V.,* 277 F.Supp.2d 654, 662 (N.D.Tex. 2002) (finding service upon Mexican defen-

dant proper where Texas Secretary of State forwarded suit papers to that defendant via registered mail) *with OGM, Inc. v. Televisa, S.A. de C.V.,* No. CV 08–5742–JFW (JCx), 2009 WL 1025971, at *2–3 (C.D.Cal. Apr. 15, 2009) (finding that Mexico's objection to Article 10 was mistranslated and that it does in fact expressly object without limitation to service of process via postal channels).

The Court finds *OGM, Inc. v. Televisa, S.A. de C.V.* particularly instructive. In *Televisa,* 2009 WL 1025971, at *3, the court found that "when Mexico filed its declarations with the Ministry, the Ministry prepared an erroneous 'courtesy translation' of Mexico's declarations from the original Spanish text into English" with the negative consequence that it appears that "Mexico did not object to certain of the alternative methods of service under Article 10." [2] In reaching this conclusion, the court relied on a certified translation of the objection by American Language Services (a company specializing in the translation of documents), a translation by a person familiar with the English and Spanish languages for thirty-two years, and a law review article [3] addressing the mistranslation. *Id.* at *2. The Court noted that the State Department's website relied on the erroneous courtesy translation and that as a result of reliance on its website and/or the erroneous translation, several courts "have concluded that Mexico did not object to certain of the alternative methods of service under Article 10." *Id.* at *3.

The *Televisa* court, however, held that it was "bound by the original Mexican declaration, not the 'courtesy translation,' the U.S. State Department's website, or the state or district court decisions relying on the courtesy translation and/or the U.S. State Department's website." In reaching this decision, it relied in part on the Supreme Court's opinion in *Todok v. Union State Bank of Harvard, Neb.,* 281 U.S. 449, 453, 50 S.Ct. 363, 74 L.Ed. 956 (1930), which held that the original language of a treaty was controlling rather than the English translation. *Id.*

The Court finds the law review article, corrected translation and *Televisa* opinion persuasive, especially in light of *Todok. See also United States v. Harang,* 165 F.2d 106, 110 (5th Cir.1948) [4] (holding that the original language of the statute (French) prevailed over the English translation "where there is ambiguity, variance, or discrepancy between the two texts"). Consequently, Mexico's objection to Article 10, which states that service via postal channels is not permitted, makes Plaintiffs' sending of the summons and complaint via FedEx to VW–Mexico's principal place of business, improper. However, VW–Mexico is still amenable to service under the Hague Convention. Accordingly, the Court will order that service be quashed and deny VW–Mexico's motion to dismiss.

## V. Conclusion

The Court QUASHES Plaintiffs' service of process on Defendants VW–Germany

---

**2.** The original Spanish version states in pertinent part, "En relacion con el articulo 10, los Estados Unidos Mexicanos no reconocen la facultad de remitir directamente los documentos judiciales a las personas que se encuentren en su territorio conforme a los procedimientos previstos en los incisos a), b) y c) ...."

**3.** *See* Charles B. Campbell, *No Sirve: The Invalidity of Service of Process Abroad by Mail*

or *Private Process Server on Parties in Mexico Under the Hague Service Convention,* 19 MINN. J. INT'L L. 107 (2010).

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *Id.* at 1209.

and VW–Mexico and DENIES Defendants VW–Germany and VW–Mexico's motion to dismiss [8]. As it has already been six months since Plaintiffs filed this action, Plaintiffs must act diligently to effect service upon VW–Germany and VW–Mexico. Failure to do so could result in dismissal of Plaintiffs' claims against these parties.

The Court DENIES Plaintiffs' motion to file a surreply [20] and DENIES AS MOOT Defendants VW–Germany and VW–Mexico's motion to strike [21]. The Clerk is DIRECTED to DROP The Volkswagen Group from this case.