COMPASS BANK, Plaintiff,

v.

Max Loren KATZ and Kathleen Frances Katz, Defendants.

Civil Action No. 5:12–cv–00045.

United States District Court,
S.D. Texas,
Laredo Division.

Sept. 27, 2012.

Sarah Patricia Santos, The Davis Group Attorneys & Counselors, P.C., San Antonio, TX, Plaintiff.

## MEMORANDUM AND ORDER

J. SCOTT HACKER, United States Magistrate Judge.

Pending before the Court is Plaintiff Compass Bank's "Motion for Substituted Service on Defendants," Max Loren Katz and Kathleen Frances Katz. (Dkt. No. 5.) Therein, Plaintiff represents that, on April 30, 2012, it attempted service on Defendants at their "last known business address" in California, which "was a private postal center where Defendants maintained a box." (Dkt. No. 5,

¶ 4.) The owner of the postal center informed Plaintiff's process server that Defendants were residing in Mexico. (*Id.*) Approximately thirty days later, Plaintiff also attempted to serve Defendants at their last known residential address, also in California. (Dkt. No. 5, ¶ 5.) The current residents at that address maintained that Defendants were no longer residing there and left no forwarding information. (*Id.*)

Currently, Plaintiff believes that Defendants "are located in Tijuana, Mexico," but contends that their "whereabouts . . . are unknown." (Dkt. No. 5, ¶ 9.) Pursuant to Federal Rule of Civil Procedure 4(f)(3),[1] Plaintiff seeks court authorization to serve Defendants by email, "at all known email addresses, which is reasonably effective to give them notice of the suit." (Dkt. No. 5, ¶¶ 7, 14.) For the reasons set out below, Plaintiff's motion is **DENIED**.

## I. DISCUSSION

■ Federal Rule of Civil Procedure 4(f) governs service on individuals in a foreign country,[2] stating that service may be accomplished:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; 2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: . . .; or 3) by other means not prohibited by international agreement, as the court orders.

Fed.R.Civ.P. 4(f). Significantly, Plaintiff asks the Court to permit service pursuant to Rule 4(f)(3), which allows a party to use

---

1. Plaintiff initially requests substituted service on Defendants "pursuant to Tex.R. Civ. P. 109a." (Dkt. No. 5, at 1). Plaintiff thereafter requests substituted service pursuant to Rule 4(f)(3). (*Id.* at 4.) Texas Rule of Civil Procedure 109a allows a court to prescribe a method of substituted service that is "as likely as publication to give defendant actual notice," "[w]henever citation by publication is authorized." Tex.R. Civ. P. 109a. However, service by publication has yet to be authorized in this matter and thus the Court finds Rule 109a inapplicable. As such, the Court will only consider Plaintiff's request for service by email under Rule 4(f)(3).

2. The provisions of Rule 4(f) are not triggered by the citizenship of the individual being served, but rather by the place in which service is effected. *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 524 (9th Cir.1997).

alternative methods of service if 1) the party obtains permission of the court, and 2) those methods are not otherwise prohibited by international agreement. Fed.R.Civ.P. 4(f)(3); *see Nabulsi v. Al Nahyan,* No. H–06–2683, 2007 WL 2964817, at *4 (S.D.Tex. Oct. 9, 2007) (citing *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 n. 4 (9th Cir. 2002) ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1).")). Thus, the issue at hand becomes whether there is an applicable international agreement between the United States and Mexico, which would preclude this Court from granting Plaintiff's request to serve Defendants by email.

## A. The Hague Convention is Applicable

The United States and Mexico are both signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 [hereinafter Hague Convention]. *See* Hague Conference on Private International Law, Status Table, http://www.hcch.net/index_en.php?act=conventions. status&cid=17 (last visited Sept. 23, 2012) (listing the contracting states to the Hague Convention). The Hague Convention is a multinational treaty, formed for the purpose of creating an "appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time," thereby simplifying and expediting international service of process. *Nuovo Pignone, SpA v. STORMAN ASIA M/V,* 310 F.3d 374, 383 (5th Cir.2002). As a ratified treaty, compliance with the Hague Convention is mandatory in all cases to which it applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk,*

486 U.S. 694, 705, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). However, Article 1 of the Hague Convention clearly dictates that the Convention "shall not apply where the address of the person to be served with the document is not known." 20 U.S.T. 362, Art. 1.

As indicated above, Plaintiffs contend that, though Defendants are presumably in Tijuana, Mexico, their "whereabouts ... are unknown." (*See* Dkt. No. 5, ¶ 9.) Consequently, Plaintiffs argue that the Hague Convention is not applicable. (*Id.* ¶ 11) Notably, there appears to be no binding authority in the Fifth Circuit that clearly establishes a standard for determining when an address is "known" versus when an address is "unknown" within the meaning of the Hague Convention. Nonetheless, various federal district courts have dealt with this issue.

In deciding whether defendants' addresses are "unknown," courts have repeatedly looked to the efforts plaintiffs have put forth in attempting to discover said addresses. *See Opella v. Rullan,* No. 10–21134–CIV, 2011 WL 2600707, at *5 (S.D.Fla. June 29, 2011) ("[A]n address is not 'known' within Article I of the [Hague] Convention only when it is unknown to the plaintiff after the plaintiff exercised reasonable diligence in attempting to discover that address."). *Compare RPost Holdings, Inc. v. Kagan,*[3] No. 2:11–cv–238–JRG, 2012 WL 194388, at *1, *2 (E.D.Tex. Jan. 23, 2012) (granting substituted service on defendant only after plaintiff had attempted service through the Hague Convention on the address associated with defendant's online business website and had requested defendant's address from defendant's attorney and been refused), *and Chanel, Inc. v. Song Xu,* 2010 WL 396357, at *1, *3 (rationalizing that, because plaintiff

3. Plaintiff has cited to *RPost Holdings,* 2012 WL 194388, as authority for the proposition that the Hague Convention does not apply where the address of the person to be served is unknown, in its Motion for Substituted Service (Dkt. No. 5, ¶ 11). However, *RPost Holdings* on its face seems to require a greater level of due diligence than Plaintiff has here exhibited, before authorizing substituted service. Plaintiff also cites to *Velasco v. Ayala,* 312 S.W.3d 783 (Tex.App–Houston [14th Dist.] 2009, no pet.) for support,

arguing that "[t]he Hague Convention does not apply when the defendant is a resident of Texas or the residence of the defendant is unknown." (Dkt. No. 5, ¶ 11.) Yet, in *Velasco,* the court reiterated that service of process on a defendant in Mexico is governed by the Hague Convention, and that substituted service should not be granted "with respect to a person whose name and address are known *or [are] very easily ascertainable....*" *Velasco,* 312 S.W.3d at 796 (emphasis added) (quoting another source).

hired a private investigator in China who determined that the physical addresses provided by defendants did not identify street names, numerical street addresses or building numbers and that the addresses interchanged postal codes and sections for various cities, and who also conducted further searches of public databases and directories in China, unable to locate defendants, their addresses were unknown), *and Malone v. Highway Star Logistics, Inc.*, No. 08–cv–01534–RPM–KLM, 2009 WL 2139857, at *2 (D.Co. July 13, 2009) (ruling that, due to plaintiff's attempted service through the Hague Convention and through private process servers at defendants' various foreign addresses on their vehicle registration certificates, their vehicle liability insurance cards, and their drivers' licenses, as well as at the addresses provided by defendants, the court was satisfied that defendants' addresses were unknown), *and BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D.Va.2005) (concluding that, after numerous attempts to serve defendant at his last two known addresses in Pakistan through the Hague Convention failed, and after plaintiffs hired an investigative firm in Pakistan who did "[a] month of searching through telephone records, utility records, property records, various housing authorities' records, law enforcement records and other personal identifying databases" but were unable to find defendant's whereabouts, defendant's address was unknown), *with Progressive Southeastern Ins. Co. v. J & P Transp.*, No. 1:11–cv–137, 2011 WL 2672565, at *2 (N.D.Ind. July 8, 2011) (determining that, even though plaintiff initially used a private investigator to locate defendants, plaintiff's failure to ask the private investigator to perform any follow-up work after the initial attempted service through the Canadian Central Authority failed did not amount to reasonable diligence), *and Opella*, 2011 WL 2600707, at *3, *6 (holding that, because plaintiff did not personally check the voter registration records of Mexico, the drivers' license registration records

or the utility company records in an effort to locate defendant, plaintiff's efforts to search for defendant in only certain municipalities of Mexico did not constitute reasonable diligence, and thus defendant's address was not unknown), *and Jimena v. UBS AG Bank*, No. CV–F–07–367 OWW/SKO, 2010 WL 2465333, at *9, *10 (E.D.Cal. June 10, 2010) (refusing to authorize substituted service because plaintiff provided no information regarding his efforts to ascertain defendant's address in Switzerland, had failed to conduct an appropriate investigation regarding defendant's address, and had not attempted to effect service through the Hague Convention).

For the purposes of the Hague Convention, Plaintiff's contention that Defendants' address is "unknown" is problematic, given the case law cited above. In these cases, either (1) the district court required a party to exercise reasonable diligence in attempting to discover a defendant's address in the foreign country, or (2) a party demonstrated reasonable efforts in attempting to discover the defendant's address in the foreign country, before the court made a finding that those addresses were "unknown." In other words, the standard set out (either directly or indirectly) seems to require, at the least, that a plaintiff put forth reasonable diligence in attempting to discover defendant's address, before finding the party can circumvent the methods for service of process authorized by the Hague Convention.[4]

Here, while Plaintiff has used some diligence in locating Defendants, the Court is not convinced that it should allow Plaintiff to use an alternative method of service, pursuant to Rule 4(f)(3). Significantly, Defendants maintain an active website for their Baja Real Estate Group business, which identifies a physical address in Rosarito Beach, Mexico, along with a post office box address in Chula Vista, California. At the August 3rd hearing, Plaintiff admitted that it was aware of the physical business address in Rosarito

4. As the Plaintiff notes in its motion, a plaintiff should never seek alternative service under Rule 4(f)(3) merely to "expedite the process and avoid additional costs of service." *Baker Hughes Inc. v. Homa*, No. H–11–3757, 2012 WL 1551727, at *17 (S.D.Tex. Apr. 30, 2012). Rather, a plaintiff must demonstrate why "the facts and circumstances of the present case *necessitate* [] the district court's intervention." *Id.* (emphasis added) (quoting another source).

Beach, Mexico, but had not attempted to serve Defendants at that physical location. (Aug. 3rd Hr'g at 1:35–1:36 p.m.) Instead, Plaintiff only attempted service at the post office box in the United States. (*Id.*) The Court further notes that the email address with which Defendant Max Katz had communicated with Plaintiff's counsel corresponds to his email address listed on his business website. (*See* Dkt. No. 5, Exs. A–2 to A–7.) This fact indicates the accuracy of this website. Put simply, it is possible that Defendants can be served or located at the physical business address.

In addition, the underlying suit in this matter revolves around a loan Plaintiff made to Defendants to purchase a vacation home in Rosarito, Mexico. (Dkt. No. 1, ¶ 6.) During the August 3rd Hearing, when questioned by the Court, Plaintiff stated that there was uncertainty as to whether Defendants were living in the house financed by the bank. (Aug. 3rd Hr'g at 1:34 p.m.) Plaintiff acknowledged that it had done internet searches and found that Defendants were advertising their vacation home as rental property through their Baja Real Estate Group business. (*Id.*) Plaintiff also attempted to send international mail, return receipt requested, to the Rosarito vacation home. Although Plaintiff received no signed receipt, the mail was not returned as undeliverable either. (*Id.*)

Notably, Plaintiff has not otherwise attempted to serve Defendants at the Rosarito vacation home. (*See id.*) While the Court realizes that Defendants might not be living at the vacation home they are seemingly renting to the public, one court has previously suggested that service through the Hague Convention is warranted even when service at a particular address might be ineffective, because the authorities or other persons at that address might have information regarding defendants' whereabouts. *See Blumedia*

*Inc. v. Sordid Ones BV*, No. 10–cv–01158–MSK–KLM, 2011 WL 42296, at *4 (D.Colo. Jan. 6, 2011) ("Even if Defendants are not in fact located at [the address] ... or the address proves to be false, authorities in the Netherlands may have information about Defendants that can be used to effect traditional service.").

The evidence therefore suggests that at least two addresses for Defendants are readily available, and Plaintiff has made no attempt to serve Defendants at either of these addresses. Accordingly, the exception provided by the Hague Convention—when a defendant's address is not known—is inapplicable to the present case, and the methods of service prescribed by the Hague Convention are controlling.

### B. Mexico Does Not Allow Service By Email

■ The Hague Convention sets forth the permissible methods of effecting service abroad. *Nuovo Pignone*, 310 F.3d at 383. The primary method of service authorized by the Hague Convention requires service through a member state's "Central Authority." *See* 20 U.S.T. 362, Arts. 2–7. The Central Authority of each member state may then execute service pursuant to its own internal laws, or according to a particular method requested by the requesting state. *Id.* The Hague Convention also provides various exceptions to this method of service, pursuant to Articles 8, 9, and 10, including the option "to send judicial documents, by postal channels, directly to persons abroad...." 20 U.S.T. 362, Art. 10(a).[5]

■ However, Article 10 expressly makes service via these postal channels contingent on the "State of destination" not objecting. *Id.* As previous courts have noted, when Mexico acceded to the Hague Convention, it filed its declarations objecting to all alterna-

---

5. Although there are courts within several circuits, including the Fifth, that have previously interpreted Article 10(a) to prohibit *service* by mail, because it uses the term "send" as opposed to "serve" or "service," *Lafarge Corp. v. M/V Macedonia Hellas*, No. Civ.A. 99–2648, 2000 WL 687708, at *10–11 (E.D.La. May 24, 2000), a 2003 Special Commission on the operation of the Hague Service Convention made explicit that the

term "send" in Article 10(a) "is to be understood as meaning 'service' through postal channels." *See Mitchell v. Volkswagen Group of America, Inc.*, 753 F.Supp.2d 1264, 1270 (N.D.Ga.2010); Charles B. Campbell, *No Sirve: The Invalidity of Service of Process Abroad by Mail or Private Process Server on Parties in Mexico Under the Hague Service Convention*, 19 Minn. J. Int'l. L. 107, 119 (2010).

tive channels of service under Article 10.[6] *See, e.g., Mitchell*, 753 F.Supp.2d at 1271; *OGM, Inc. v. Televisa, S.A. de C.V.*, No. CV 08–5742–JFW (JCx), 2009 WL 1025971, at *2 (C.D.Cal. Apr. 15, 2009). Thus, service through Mexico's Central Authority is the exclusive method of service of process on parties in Mexico under the Hague Convention. *Opella*, 2011 WL 2600707, at *5; *Mitchell*, 753 F.Supp.2d at 1271; *Televisa*, 2009 WL 1025971, at *3.

## II. CONCLUSION

Because service under Rule 4(f)(3) cannot be in contravention of any international agreement, the Court must obey the dictates of the Hague Convention. Moreover, because Plaintiff has not shown that Defendants' address is "unknown," the Hague Convention's specified methods of service apply. Mexico has indicated that service through its Central Authority is the sole permissible method of service on persons in Mexico. As such, Plaintiff's request to serve Defendants via email under Rule 4(f)(3) is DENIED.

IT IS SO ORDERED.

Sarah Patricia Santos, The Davis Group Attorneys & Counselors, P.C., San Antonio, TX, for Plaintiff.

Michael S. Warda, Michael S. Warda, a Professional Law Corporation, Turlock, CA, Ralph Abercia, Attorney at Law, Houston, TX, for Defendant.

---

**6.** There had been some discrepancy among courts as to whether Mexico objected outright to Article 10, or whether Mexico was opposed only to the service of documents through diplomatic or consular agents, under subsection (b) and (c) of Article 10. *See Mitchell*, 753 F.Supp.2d at 1270–71 (comparing previous courts' and governmental websites' interpretations of Mexico's declarations). The confusion arose from erroneous "courtesy translations" of Mexico's declarations from the original Spanish text into English. *Televisa*, 2009 WL 1025971, at *3. However, it is now undisputed that Mexico has objected to all alternative methods of service under Article 10. *Mitchell*, 753 F.Supp.2d at 1271; *Televisa*, 2009 WL 1025971, at *3.