**T–12 ENTERTAINMENT, LLC and Kareem Hawthorne, Plaintiffs,**

**v.**

**YOUNG KINGS ENTERPRISES, INC., Ego Entertainment, LLC, Troy Williams, Anthony Adighibe, Charles Bryant Bourgeois, Desmond Key, Dae'shawn Shelton, Fred Clark, and Korey Felder, Defendants.**

**Civil Action No. 1:14–cv–841–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

Signed Aug. 11, 2014.

**1384**

Julie Rachel Comer, Logan B. Winkles, Thomas J. Mihill, Cannon, Mihill & Winkles, LLC, Atlanta, GA, for Plaintiffs.

Pat Dean Dixon, III, City of Atlanta Department of Procurement, Atlanta, GA, for Defendants.

Charles Bryant Bourgeois, Atlanta, GA, pro se.

---

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This trademark-infringement case is before the Court on several related motions: the motions to dismiss for failure to state a claim of Defendants Young Kings Enterprises, Inc., Korey Felder and Desmond Key [10] and Defendants Troy Williams, Anthony Adighibe and Dae'shawn Shelton [26]; the motions to dismiss for insufficient service by Young Kings and Key [10]; the motion to set aside entry of default by Defendants Ego Entertainment, LLC and Charles Bryant Bourgeois [14]; and the motion for oral argument of Plaintiffs T–12 Entertainment, LLC and Kareem Hawthorne (T–12).[1]

### I. Background[2]

T–12 plans and hosts spring-break parties and events. In 2009, T–12 developed a new theme for a series of spring-break events called *I Plead the 5th*. These events were held in nightclubs and other venues in the Miami, Florida area, and they were advertised in a variety of ways throughout the Southeast. They were successful.

Given this success, Defendants contacted T–12 about being involved in future spring-break events. From 2010–2013, Defendants helped T–12 plan or host *I Plead the 5th* events in the Miami area. These events were popular and profitable.

In early 2014, T–12 learned that Defendants were planning to host their own series of spring-break events in the Miami area under the name *I Plead the Fifth*. Defendants' 2014 events were to be both substantively identical and held in the same or similar locations as those hosted by T–12 from 2009 through 2013.

---

1. This action essentially involves two groups of Defendants: Young Kings and the individuals associated with it—Felder, Key, Williams, Adighibe and Shelton—and Ego Entertainment and the individuals associated with it—Bourgeois and Fred Clark, who has yet to be served or enter an appearance.

 When Young Kings, Felder and Key moved to dismiss, Williams, Adighibe and Shelton had yet to be served. Once they were, they also moved to dismiss; indeed, their brief is nearly identical to that filed by Young Kings, Felder and Key. For this reason, the Court refers to these Defendants as the Young Kings Defendants and treats their briefs on the failure-to-state-a-claim issue as one.

 To be clear, unless otherwise stated, *Defendants* refers to all named Defendants in the complaint.

2. At the motion-to-dismiss stage, the factual allegations in the complaint are accepted as true, and all inferences from these allegations are construed in the light most favorable to the plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir.2009).

In February, T–12 sent Defendants a letter demanding that they cease and desist their infringing use of the *I Plead the 5th* mark.[3] Through their counsel, Young Kings responded that they were "abandoning the 'I Plead The 5th' name ***entirely and immediately.*** All promotional advertisements, tangible and digital, utilizing the proposed mark have been removed."[4]

While Defendants did not cancel their 2014 events, they did change the name of one website to "What Happens in Miami Stays in Miami." This slogan, however, was commonly used in connection with T–12's marketing and hosting of *I Plead the 5th* events. And despite Young Kings' letter, T–12 discovered that Defendants were still using *I Plead the Fifth* in connection with most of their events and advertising, including ticket sales, website ads, videos and Twitter.

T–12 asserts trademark rights in the name *I Plead the 5th* as it relates to spring-break events, particularly those hosted in the Miami area. Following the 2009 events, the public associated *I Plead the 5th* events with T–12. So by using a nearly identical name and providing substantially the same services, Defendants' 2014 events created an extreme likelihood of confusion among the consuming public and prevented T–12 from hosting their own popular and profitable *I Plead the 5th* events in Miami this year. Also, Defendants' continued use of *I Plead the Fifth* in connection with their 2014 events evinces

an intentional disregard of T–12's rights. Accordingly, T–12 asserts claims for:

Count one: unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

Count two: violations of the Georgia Fair Business Practices Act, O.C.G.A. §§ 10–1–390 to –407;

Count three: violations of the Uniform Deceptive Trade Practices Act, O.C.G.A. §§ 10–1–370 to –375;

Count four: state-law fraud based on the encroachment of T–12's trademarks, O.C.G.A. § 23–2–55;

Count five: tortious interference with business relations;

Count six: unjust enrichment; and

Count seven: litigation expenses under O.C.G.A. § 13–6–11.[5]

The Young Kings Defendants have moved to dismiss for failure to state a claim [10 & 26], and Young Kings and Key have moved to dismiss for insufficient service [10]. Additionally, Ego Entertainment and Bourgeois have moved to set aside the clerk's entry of default against them [14].

## II. Motion to Dismiss for Failure to State a Claim

### A. Legal Standard

A claim will be dismissed under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550

---

3. T–12 attached a copy of this letter to the complaint. It appears that it was sent by mail to the registered agent of the corporate Defendants and by email to the individual Defendants.

4. T–12 avers, "One Defendant, Young Kings Entertainment, LLC, did respond through counsel to th[e] cease and desist and stated that it would cease the infringing activities."

Young Kings' letter, which is attached to the complaint, partially contradicts this averment. In that letter, Young Kings denied any infringement. Also, it is unclear that this letter was sent solely on behalf of Young Kings.

5. Actually, T–12's complaint contains two count sixes.

U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citation omitted); *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1325 (11th Cir.2012). Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. And while all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas,* 643 F.3d 1300, 1302 (11th Cir.2011), the court need not accept as true plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and ... determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937.

### B. Analysis

The Young Kings Defendants argue that T–12's complaint should be dismissed for two reasons. First, the complaint is a shotgun pleading. Second, T–12 has pleaded insufficient facts to state a claim for relief under § 43(a) of the Lanham Act. Neither reason is availing.

### 1. Shotgun Pleading

██ Shotgun pleadings have long drawn fire from the Eleventh Circuit. *See Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 979 n. 54 (11th Cir.2008) (noting that between 1985 and 2008 the circuit "expressly condemned shotgun pleadings upward of fifty times"). The central problem with such pleadings is that it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," thus thwarting the opposing party's ability to frame a responsive pleading. *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir.1996).

For complaints, this problem often occurs where there are "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir. 2002). To be sure, incorporation is not necessarily problematic. *Cf.* FED.R.CIV.P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."). But where a plaintiff "indiscriminately incorporates assertions from one count to another," the complaint can become incomprehensible and "prevent the [defendant] from reasonably being able to prepare a[n answer] or simply make the burden of doing so more difficult." 5A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1326 (3d ed.2004); *see also Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir.2001) (classifying a complaint as a shotgun pleading where

"[e]ach count incorporates by reference the allegations made in a section entitled 'General Factual Allegations'—which comprises 146 numbered paragraphs—while also incorporating the allegations of any count or counts that precede it").

For cases with multiple defendants, the inability-to-frame-an-answer problem has another frequent cause: failure to specify which defendant is responsible for each act alleged. *See Beckwith v. Bellsouth Telecomms. Inc.*, 146 Fed.Appx. 368, 372 (11th Cir.2005) (finding a complaint deficient because "[i]t is virtually impossible to ascertain what factual allegations correspond with each claim and which claim is directed at which defendant").

■ Shotgun complaints violate the letter of the Federal Rules because they are "in no sense the 'short and plain statement of a claim' required by Rule 8." *Magluta*, 256 F.3d at 1284. They also violate the spirit of the Federal Rules, which is "to secure the just, speedy, and inexpensive determination of every action." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 543 (11th Cir.2002) (quoting FED. R.CIV.P. 1) (internal quotation marks omitted). Experience offers another reason to eschew them: they often beget shotgun answers, which in turn trigger "the discovery goat rodeo"—unbridled discovery. *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir.2014). The consequences of shotgun pleadings are bleak: "issues are not joined, discovery is not controlled, and the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson*, 77 F.3d at 367. But these consequences are avoidable so long as the pleadings identify the relevant issues. *Paylor*, 748 F.3d at 1126.

■ For this reason, courts faced with shotgun complaints should ordinarily require the plaintiff to replead, either on motion or sua sponte. *Davis*, 516 F.3d at 983–84. But in extreme circumstances, they may dismiss with prejudice and even impose additional sanctions. *See Byrne v. Nezhat*, 261 F.3d 1075, 1131–34 (11th Cir. 2001) (affirming dismissal with prejudice of shotgun complaint and imposition of monetary sanctions), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008). Yet because "dismissal with prejudice is a drastic sanction," it may be imposed only "when: (1) the failure to comply with a court order is a result of willfulness or bad faith, and (2) the district court specifically finds that lesser sanctions will not suffice." *Beckwith*, 146 Fed.Appx. at 372 (internal citations omitted).

Courts have dismissed or ordered the repleading of complaints that were filled with "irrelevant factual allegations and legal conclusions," *Strategic Income Fund*, 305 F.3d at 1296; made up of "rambling recitations" and immaterial factual allegations, *Pelletier v. Zweifel*, 921 F.2d 1465, 1517 (11th Cir.1991), *abrogated on other grounds by Bridge*, 553 U.S. 639, 128 S.Ct. 2131; replete with material allegations "that are buried beneath innumerable pages of rambling irrelevancies," *Magluta*, 256 F.3d at 1284; and where after reading the complaint, the court could not even "explain what allegedly transpired between and among" the parties, *Strategic Income Fund*, 305 F.3d at 1295.

T–12's complaint has none of these defects, so it does not warrant repleader, much less dismissal with prejudice.[6] Un-

---

6. The Young Kings Defendants conclude that T–12's complaint should be dismissed in its

entirety because it is a shotgun complaint. Though they do not specify that this dismissal

like the Young Kings Defendants, the Court had no problem understanding what allegedly happened between the parties or comprehending T–12's claims for relief. Indeed, T–12 helpfully labels paragraphs 17–25 "Allegations Common to all Claims for Relief" and sets out Defendants' alleged infringing conduct in paragraphs 26–35 under the heading "The Infringements." Nor did the Court find it difficult to match T–12's claims for relief with the responsible Defendant; all Defendants are allegedly liable under each count.

That said, T–12's complaint does bear one mark of a shotgun pleading: repeated incorporation by reference. Each of the seven counts begins by incorporating all previous paragraphs, including those in the previous counts. The question then is, does this alone warrant requiring T–12 to replead? It does not.

Almost sixty years ago, the former Fifth Circuit explained that the Federal Rules "were not adopted to set traps and·pitfalls by way of technicalities for·unwary litigants"; thus, "substantial compliance with the rules is sufficient." *Des Isles v. Evans*, 225 F.2d 235, 236 (5th Cir.1955).

Nothing in the numerous Eleventh Circuit cases excoriating shotgun pleadings is to the contrary. Indeed, complaints "must be construed so as to do justice." FED. R.CIV.P. 8(e). The Court thus declines to make the avoidance of any characteristic of a shotgun complaint a de facto pleading requirement.

Here, T–12's complaint substantially complies with Rule 8's "short and plain statement" requirement. This does not mean that T–12 could not have more carefully selected the paragraphs to incorporate by reference. But it does mean that the incorporation of a few stray paragraphs in each count will not prevent the Young Kings Defendants from preparing an answer.[7] It also means that the Court need not undertake the "cumbersome task of sifting through myriad claims, many of which [may be] foreclosed by [various] defenses," *Anderson,* 77 F.3d at 366–67 (alterations in original) (quoting *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir. 1984)) (internal quotation marks omitted), before ruling on the sufficiency of T–12's claims. T–12's complaint is thus· not a shotgun pleading.

should be with prejudice, a dismissal under Federal Rule of Civil Procedure 12(b)(6) operates as an adjudication on the merits and is thus with prejudice, unless the dismissal order states otherwise. *See NAACP v. Hunt,* 891 F.2d 1555, 1560 (11th Cir.1990).

7. In their reply brief, Young Kings, Felder and Key posit that the factual allegations in T–12's complaint "are intentionally vague to mask the true facts." They claim that the complaint "mislead[s] the [C]ourt and confuse[s them]" to the point of preventing "[them] from forming a responsive pleading" because it "create[s] the false impression that [they] had not promoted and marketed similar Spring Break events in the Miami, Florida area, using identical marketing and promotion before 2010 and without [T–12]." This argument is unpersuasive.

To begin, the Court will not inquire into T–12's motives. Next, the facts that Young Kings, Felder and Key proffer are not properly before the Court. Even if they were, the Court would remain unconvinced that the complaint is so vague as to preclude an answer. Nothing in T–12's complaint suggests that 2009 marks the first time that spring-break events like those carried out under the *I Plead the 5th* name were held in the Miami area; it merely alleges that 2009 was the first time that the *I Plead the 5th* name was used in connection with such events. So even if Young Kings, Felder and Key hosted similar events in the Miami area as early as 2007, as their reply brief claims, this fact would not preclude them from framing an answer. Indeed, this would be true even if they hosted such events under the *I Plead the 5th* name. In other words, allegations that are allegedly false do not preclude the framing of an answer; they simply call for a specific denial.

## 2. Unfair Competition Under § 43(a) of the Lanham Act

The Lanham Act defines *trademark* and *service mark* similarly: "any word, name, symbol, or device, or any combination thereof" that is "used by a person ... to identify and distinguish" either "his or her goods ... from those manufactured or sold by others" or "the services of one person ... from the services of others" and that "indicate[s] the source of the goods [or services]." 15 U.S.C. § 1127; *see also Univ. of Fla. v. KPB, Inc.*, 89 F.3d 773, 776 n. 4 (11th Cir.1996) ("A 'service mark' is identical to a trademark in all respects except that it is intended to indicate the origin of services, rather than goods."). Regardless of whether T–12's infringement claim relates to a trademark or a service mark (or both), the analysis is the same. *Tana v. Dantanna's*, 611 F.3d 767, 772 n. 3 (11th Cir.2010). So for simplicity's sake, the Court, like the parties, refers to T–12's claim as one for trademark infringement.

 The Lanham Act protects only those marks that are sufficiently "distinctive," meaning "capable of distinguishing the owner's goods [or services] from those of others." *Id.* at 773. The Eleventh Circuit recognizes four categories of distinctiveness:

> (1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4)

arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks.

*Id.* at 774 (quoting *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797–98 (11th Cir.2003)) (internal quotation marks omitted).

 These categories create a distinctiveness spectrum. Inherently distinctive marks like those in categories (3) and (4)—suggestive, arbitrary and fanciful marks—generally receive trademark protection. *Id.* Conversely, indistinctive marks like those in category (1)—generic marks—generally do not. *Id.* Marks in category (2)—descriptive marks—form a gray area; they are not inherently distinctive, but they garner trademark protection where they have acquired "secondary meaning." *Id.* "A name has acquired secondary meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Id.* (quoting *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir.2007) (alteration brackets and quotation marks omitted)) (internal quotation marks omitted).

 "Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition ... [and] forbids unfair trade practices involving infringement of trade dress, service marks, or trademarks, even in the absence of federal trademark registration." [8] *Univ. of Fla.*, 89 F.3d at 775–76. That section prohibits "the use in interstate commerce of any 'word, term, name, symbol or device, ... or any false designation of origin ... which is likely to cause confusion ... as to the origin, spon-

---

8. Here, T–12 has no registered marks. This is why it asserts a claim for unfair competition under § 43(a) rather than § 32(a) of the Lanham Act. *See Tana*, 611 F.3d at 773 n. 5 ("Section 32(a) creates a cause of action for the infringement of a registered mark, where-

as § 43(a) protects qualifying unregistered trademarks."). Contrary to the Young Kings Defendants' contention, T–12 was not required to explicitly plead that the alleged infringement was of a common-law mark.

sorship, or approval of his or her goods, services, or commercial activities by another person.'" *Tana*, 611 F.3d at 772–73 (alterations in original) (quoting 15 U.S.C. § 1125(a)). Thus, to establish a prima facie case of infringement under § 43(a), plaintiffs must show that (1) they have rights in a mark or name, and (2) defendant's unauthorized use of this mark or name is likely to result in consumer confusion. *Id.* at 773.[9]

### a. The Validity and Ownership of the *I Plead the 5th* Mark

 Common-law trademarks or service marks cannot be created without actual prior use in commerce. *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir.2011). "[T]he use of a mark in commerce ... must be sufficient to establish *ownership rights* for a plaintiff to recover against subsequent users under section 43(a)." *Id.* (alterations in original) (quoting *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir.2001)) (internal quotation marks omitted). In this circuit, a mark's "prior use" establishes the plaintiff's ownership only if the evidence shows that the mark was adopted and used publicly to either identify or distinguish the marked goods or services to an appropriate segment of the public. *Id.* The circuit has found that such evidence exists where "the distribution" of the mark was "widespread" because the mark was accessible to anyone with access to the Internet; the evidence established that "members of the targeted public actually associated the mark ... with the [product] to which it was affixed"; "the mark served to identify the source of the

[product]; and other potential users of the mark had notice that the mark was in use in connection with [the product]." *Id.* (alterations in original) (quoting *Planetary Motion*, 261 F.3d at 1196, 1197) (internal citations omitted).

Here, the Young Kings Defendants contend that T–12 has not adequately pleaded the validity and ownership of the *I Plead the 5th* mark. They are mistaken.

First, *I Plead the 5th* is a plausibly protectable mark. It is not a generic mark, and the Young Kings Defendants do not suggest otherwise. T–12 contends that it is a suggestive, arbitrary or fanciful mark. But even if it is merely a descriptive mark, T–12 alleges that it has acquired secondary meaning. Thus, the well-pleaded facts, when accepted as true, show that *I Plead the 5th* may be protected by § 43(a).

Second, T–12's ownership of the *I Plead the 5th* mark can be reasonably inferred. T–12 alleges that in 2009 it began using the *I Plead the 5th* name in connection with spring-break events in the Miami area and that these events were advertised in myriad ways across the Southeast, including via the Internet. The public also allegedly associated the *I Plead the 5th* name with T–12 in 2009—a year before the Young Kings Defendants became involved in the *I Plead the 5th* events. These allegations, when taken as true, create a reasonable inference that T–12 owns this mark based on prior use.

### b. The Likelihood of Confusion

 Courts in the Eleventh Circuit apply a seven-factor test to ascertain

---

**9.** Citing a Third Circuit case, the Young Kings Defendants contend that T–12's prima facie case has three elements: proof that (1) the mark is valid and legally protectable; (2) T–12 owns the mark; and (3) their use of *I Plead*

*the Fifth* is likely to create confusion about the origin of the goods or services protected by T–12's mark. Substantively, however, the Third and Eleventh Circuit tests are the same.

whether there is a likelihood of confusion between two marks. These factors are: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and ·customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *Tana*, 611 F.3d at 774–75. Also, the "geographic proximity of the use of the parties' marks ... may be relevant to the likelihood-of-confusion analysis," even though it is not an established factor. *Id.* at 780.

To adequately plead this element of a prima facie case of trademark infringement, T–12 need only offer enough facts to make a likelihood of confusion plausible. T–12's complaint easily clears this hurdle. The likelihood of confusion is spelled out in paragraphs 26–35—under the heading "The Infringements." In essence, T–12 alleges that the Young Kings Defendants' 2014 spring-break events in the Miami area were hosted under a nearly identical name—*I Plead the Fifth*—and that they advertised these events in substantially the same way to a similar customer base. These facts permit a reasonable inference of customer confusion.[10]

In short, a fair reading of the complaint raises T–12's right to relief above the speculative level. Nothing else is required to survive a motion to dismiss. A more searching inquiry must wait for summary judgment.[11]

## III. Motion to Dismiss for Insufficient Service of Process

Young Kings and Key have also moved to dismiss based on insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).

### A. Legal Standard

An action may be dismissed for insufficient service of process under Rule 12(b)(5) if the defendant is not served in accordance with Federal Rule of Civil Procedure 4. To effect service of process under Rule 4(c), the summons along with a copy of the complaint must be served by a nonparty who is over the age of eighteen within the time allotted by Rule 4(m). An individual may be served by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." FED. R.CIV.P. 4(e)(2)(B). A corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." FED. R.CIV.P. 4(h)(1)(B).

The burden of establishing that service was insufficient falls on the defendant, who must specifically describe the defect under Rule 4. *See Mitchell v. Volkswagen Grp. of Am., Inc.,* 753

---

10. Though not itself evidence of confusion, at several points in their opening briefs the Young Kings Defendants mistakenly refer to T12's alleged mark as *I Plead the Fifth*—their allegedly infringing name—rather than *I Plead the 5th*.

11. In their opening briefs, the Young Kings Defendants do not challenge whether counts two through seven were well pleaded; they merely contend that these state-law claims should be dismissed along with T–12's federal trademark claim. As a result, the Court will not examine whether T–12 has plausibly stated a claim for relief under these counts.

F.Supp.2d 1264, 1268 (N.D.Ga.2010); *accord* 5B WRIGHT, ET AL., *supra,* § 1353. If the defendant carries its burden, the plaintiff then must come forward with enough evidence to survive a motion for judgment as a matter of law. *Lowdon PTY Ltd. v. Westminster Ceramics, LLC,* 534 F.Supp.2d 1354, 1360 (N.D.Ga.2008). And if the plaintiff presents such evidence, all reasonable inferences are drawn in the plaintiff's favor. *Id.*

In this circuit, a judgment as a matter of law is appropriate only where "the facts and inferences are so strong and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contradictory verdict." *Walker v. NationsBank of Fla., N.A.,* 53 F.3d 1548, 1555 (11th Cir.1995). And such motions must be denied so long as "fair-minded persons in the exercise of impartial judgment might reach different conclusions" about the evidence. *Id.*

In the end, "[a] defendant's actual notice is not sufficient to cure defectively executed service." *Albra v. Advan, Inc.,* 490 F.3d 826, 829 (11th Cir.2007). Even so, "the Court has broad discretion to dismiss the action or to quash service but retain the case" despite improper service. *Thermo–Cell Se., Inc. v. Technetic Indus., Inc.,* 605 F.Supp. 1122, 1124 (N.D.Ga. 1985), *quoted in Mitchell,* 753 F.Supp.2d at 1269; *accord* 5B WRIGHT, ET AL., *supra,* § 1354.

### B. Analysis

Young Kings' registered agent for service is Key. According to documents filed with the Georgia Secretary of State's office, Key may be served at a residential address in College Park, Georgia.

In April 2014, a process server went to the College Park residence to serve both Young Kings and Key. The process server left a copy of the summons and complaint for both Young Kings and Key with a woman working in the yard. At that time, the process server believed that both Young Kings and Key were properly served.

After Young Kings and Key moved to dismiss for insufficient service, T–12 again tried to serve them at the residence listed on the Secretary of State's website. T–12 admits that the woman who was initially provided copies of the summons and complaint does not live at the College Park residence, so service on Young Kings and Key was initially insufficient. T–12, however, contends that it has now adequately served Key and will soon effect service on Young Kings.

It is undisputed that Young Kings has not been properly served. T–12's service of Young Kings will be quashed, but Young Kings' motion to dismiss will be denied.

In his reply brief, Key still contends that service was improper, arguing that he has not resided nor made his usual place of abode at the College Park residence where his mother lives since August 2005. However, T–12 has filed the affidavit of its process server who testifies without objection that Key in fact lived at the College Park address on the date of service. The Court will resolve this evidentiary conflict in favor of T–12 and finds that Key has been served pursuant to Rule 4(e)(2)(A).

### IV. Motion to Set Aside the Entry of Default

### A. Legal Standard

Federal Rule of Civil Procedure 55(c) provides that an entry of default may be set aside for good cause. " 'Good cause' is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of

substance." *Compania Interamericana Export–Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir.1996) (quoting *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir.1989)) (internal quotation marks omitted). Although "good cause" is not reducible to an exact formula, courts generally consider "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Id.* Also relevant is whether the defaulting party promptly corrected the default. *Id.* In the end, default judgments are "a drastic remedy which should be used only in extreme situations." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir.1985), *quoted in Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316–17 (11th Cir. 2002). This is because they are contrary to "the usual preference that cases be heard on the merits rather than by resorting to sanctions that deprive a litigant of his day in court." *Id.*

### B. Analysis

Bourgeois and Ego Entertainment were personally served on April 9, 2014. Under the Federal Rules, they had until April 30 to file an answer.[12] When they failed to do so, T–12 requested an entry of default, which the clerk entered on May 5.

Eleven days later, Bourgeois—who is not an attorney—moved to set aside the entry of default against both himself and Ego Entertainment. T–12 opposes this motion.

#### 1. Ego Entertainment

■ Ego Entertainment is a Georgia limited liability company and thus cannot appear pro se. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir.1985) ("The rule is well established that a corporation is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel."). Even after T–12 pointed this out in its June 4 opposition brief, Ego Entertainment did not appear via counsel. In any event, Bourgeois's arguments on the company's behalf must be discarded, and Ego Entertainment's motion will be denied.

T–12's opposition brief purports to incorporate a motion for default judgment against Ego Entertainment and for a hearing to determine damages under Rule 55(b). This motion, however, does not comply with the Local Rules and will not be considered. T–12 may resubmit this request in a properly filed motion. Additionally, Ego Entertainment must obtain counsel if it plans to oppose such a motion; otherwise, if T–12 properly moves for default judgment, that motion will be granted. *See* FED.R.CIV.P. 55.

#### 2. Bourgeois

■ Bourgeois's pro se motion establishes good cause to set aside his default. Four considerations tip the scales in his favor.

First and foremost, T–12 will suffer no prejudice if Bourgeois's default is set aside, nor does it argue otherwise.

Second, Bourgeois promptly moved to vacate the clerk's entry of default—his motion even predates T–12's request for default judgment.

Third, setting aside default at this point in the litigation is consistent with the Eleventh Circuit's "strong policy of determining cases on their merits," *In re Worldwide Web Sys., Inc.*, 328 F.3d

---

12. *See* FED.R.CIV.P. 12(a)(1)(A)(i) (providing that an answer must be served within twenty-one days of the date of service); FED.R.CIV.P. 5(b)(2)(A) (providing that a paper is served by handing it to a person); FED.R.CIV.P. 6(d) (providing that the three additional days to act does not apply to papers served under Rule 5(b)(2)(A)).

1291, 1295 (11th Cir.2003), a judicial policy with even more force here because final judgment against Bourgeois has not been entered, *cf. Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. Unit A 1981) (explaining that Rule 60(b) carefully balances the importance of finality to judgments and the need for judgments to reflect the facts).

Fourth, Bourgeois's motion raises at least one meritorious or beneficial defense.

While the first three considerations speak for themselves, the fourth—that Bourgeois's motion raises at least one meritorious or beneficial defense—needs an advocate. This is because at first blush T–12 persuasively counters his purported defenses.[13] But after stretching his factual assertions and legal arguments liberally, as precedent requires, reaching the merit in his defenses is not difficult.

For starters, Bourgeois's factual assertions suggest a familiar defense: T–12 cannot establish ownership of the *I Plead the 5th* mark based on prior use. Although this defense cannot prevail on a motion to dismiss, *see supra* II.B.2.a, it might prevail on summary judgment. Indeed, if Bourgeois's factual assertions are true—and some Defendants actually co-hosted *I Plead the 5th* events in 2009—then this defense may prove meritorious.

Bourgeois's factual assertions also suggest a beneficial defense: reduced personal liability if infringement is found. This plausibly meritorious defense, however, is hidden beneath an incorrect legal claim: that Bourgeois cannot be personally liable

even if Ego Entertainment infringed T–12's trademark because T–12 has "fail[ed] to aver how the corporate veil has been pierced exposing [him] to liability."

As T–12 correctly notes, both individuals and corporations "may be liable for trademark infringement under the Lanham Act." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). Indeed, corporate infringement always results from "one or more persons either officers or employees of the corporation who caused the acts to be done." *Id.* (alteration in original) (quoting *Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir.1968)) (internal quotation mark omitted). As a result, individuals are personally liable (i.e., jointly and severally with the corporation) only where they "actively and knowingly caused the trademark infringement." *Id.; see also* 4 LOUIS ALTMAN & MALLA POLLACK, CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 23:12 (4th ed.) ("Imposing tort liability for trademark infringement or unfair competition on an individual defendant who acts on behalf of a corporate defendant does not depend upon piercing the corporate veil; everyone who knowingly personally participates in the tortious act is individually liable along with the corporation which he represents." (internal footnote omitted)). Bourgeois thus may be held personally liable for Ego Entertainment's trademark infringement so long as he "actively and knowingly caused the trademark infringement."

In his motion, Bourgeois contends that after he received T–12's cease-and-desist

---

13. Instead of zeroing in on and blowing up nit-picky errors in Bourgeois's pro se motion—a loathsome but far-too-common approach to opposing a pleading, motion or brief regardless of whether it was prepared pro se or by counsel—T–12 targets and destroys reasonable interpretations of Bourgeois's arguments. For example, federal law

protects T12's rights in the *I Plead the 5th* name (assuming that this is a valid, protectable mark owned by T–12) regardless of its registration status. Bourgeois thus cannot defend against T–12's § 43(a) claim by noting that T–12 first tried to register this mark in February 2014—yet he appears. to do just that.

letter, he (and Ego Entertainment) made "a good faith effort" to comply and thus "abandoned the marking of *I Plead the Fifth* and entered a new business venture targeted to Spring Break entertainment in Miami, Florida, under the event name *What Happens in Miami.*" This allegation is partially confirmed by T–12's complaint.[14] If Bourgeois's allegation is true, any infringing conduct on his (and Ego Entertainment's) part may have stopped shortly after the cease-and-desist letter. This in turn suggests at least a partial defense for reduced personal liability.

For these reasons, Bourgeois's motion to set aside the entry of default raises at least one meritorious defense. This motion was filed promptly after default was entered. Granting the motion will not prejudice T–12, but it will further the Eleventh Circuit's policy favoring the resolution of cases on their merits. Good cause exists to set aside the clerk's entry of default against Bourgeois, and his motion will thus be granted.

## V. Conclusion

The Young Kings Defendants' motions to dismiss for failure to state a claim [10 & 26] are DENIED.

Young Kings' and Key's motions to dismiss for insufficient service [10] are DENIED; however, service of Young Kings is QUASHED pending T–12's completion of service upon Young Kings.

Ego Entertainment's motion to set aside the clerk's entry of default [14] is DENIED. Bourgeois's motion to set aside the clerk's entry of default [14] is GRANTED.

14. In the complaint, T–12 avers that Defendants (including Bourgeois and Ego Entertainment) merely changed the name of one

T–12's motions for oral argument [18 & 28] are DENIED AS MOOT.

website to "What Happens in Miami Stays in Miami," a slogan that T–12 commonly used in association with *I Plead the 5th* events.