SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| ARTURO ROJAS CARDONA, JUAN JOSE ROJAS CARDONA, JUEGOS DE ENTRETENIMIENTO Y VIDEOS DE GUADALUPE, S. DE R.L. DE C.V., ENTRETENIMIENTO DE MEXICO, S.A. DE C.V., ATLANTICA DE INVERSIONES CORPORATIVAS, S.A. DE C.V., AND GUADALUPE RECREATION HOLDINGS, L.L.C., ) ) ) ) ) ) ) ) ) ) | Arizona Supreme Court No. CV-10-0017-PR Court of Appeals Division One No. 1 CA-SA 09-0281 Maricopa County Superior Court No. CV2008-090935 |
| Petitioners, ) ) | |
| v. ) ) ) | O P I N I O N |
| THE HONORABLE JOSEPH KREAMER, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of Maricopa, ) ) ) ) ) | |
| Respondent Judge, ) ) | |
| LAC VIEUX DESERT BAND OF LAKE SUPERIOR CHIPPEWA INDIANS HOLDINGS MEXICO, LLC, a Corporate Enterprise of the Lac Vieux Desert Band of Lake Superior Chippewa Indians, a federally recognized Indian Tribe; and LAC VIEUX DESERT BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, a federally recognized Indian Tribe, ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Real Parties in Interest. ) ) ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Joseph Kreamer, Judge

**VACATED AND REMANDED**

_____

_____

ALVAREZ & GILBERT, PLLC                                    Scottsdale
     By   John T. Gilbert
          Randy A. McCaskill

And

HYMEL DAVIS & PETERSEN, LLC                          Baton Rouge, LA
     By   Michael Reese Davis
Attorneys for Arturo Rojas Cardona, Juan Jose Rojas
Cardona, Juegos de Entretenimiento y Videos de Guadalupe,
S. de R.L. de C.V., Entretenimiento de Mexico, S.A. de C.V.,
Atlantica de Inversiones Corporativas, S.A. de C.V., and
Guadalupe Recreation Holdings, L.L.C.

ROSETTE & ASSOCIATES, PC                                    Chandler
     By   Robert A. Rosette
          Saba Bazzazieh
          Little Fawn Boland                       San Francisco, CA
Attorneys for Lac Vieux Desert Band of Lake Superior
Chippewa Indians Holdings Mexico, LLC, and Lac Vieux
Desert Band of Lake Superior Chippewa Indians

_____

**B A L E S**, Justice

¶1      This case involves an attempt to serve process on persons and business entities in Mexico via postal channels and email.  We hold that such service is incompatible with Mexico's accession to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention"), which provides that service of foreign judicial documents in Mexico must be made through Mexico's Ministry of Foreign Affairs.

¶2     In 2008, the Lac Vieux Desert Band of Lake Superior Chippewa Indians and a holding company created by the Tribe (collectively, the "Tribe") filed an action in the Maricopa County Superior Court against Arturo and Juan Jose Rojas Cardona and four corporate entities (collectively, the "Six Defendants").  The Tribe also sued several other defendants that are not relevant to this opinion.  The lawsuit concerns the Tribe's investment in a casino project in Guadalupe, Mexico.

¶3     The Tribe moved ex parte for alternative service on the Six Defendants.  The superior court, although later observing that each proposed method of service was likely insufficient standing alone, approved the "cobbling together" of service by the following means: (1) certified mail to the Six Defendants' attorneys of record at their domestic addresses; (2) email to Juan Jose Rojas Cardona at two addresses; (3) Federal Express delivery to the Six Defendants with return receipt requested at an address in Mexico where the parties had previously met; and (4) mail to Arturo Rojas Cardona at his last known domestic addresses.

¶4     The Tribe complied with the order but did not receive delivery confirmation at the Mexican address.  The Tribe also did not receive a return receipt for the mailings sent domestically to Arturo Rojas Cardona, but the superior court

deemed service by these mailings to be complete. *Cf*. Ariz. R. Civ. P. 4.2(c) (allowing service by mail outside Arizona but requiring a signed and returned receipt). The Six Defendants made a limited appearance and moved to dismiss for insufficiency of service of process, arguing that the alternative process violated the Hague Service Convention and Arizona Rule of Civil Procedure 4.2. Denying the motion, the superior court concluded that the Hague Service Convention did not prohibit the alternative methods of service it previously ordered. The court of appeals declined special action jurisdiction.

¶5      Because the proper method of service on persons and business entities in Mexico is an issue of statewide importance, we granted review to consider whether the Hague Service Convention allows service there by the means approved by the superior court.[1] We have jurisdiction under Article 6, Section 5(3) of Arizona's constitution and Arizona Revised Statutes ("A.R.S.") section 12-120.24 (2003).

**II.**

¶6      Service of process in a foreign country is governed by Arizona Rule of Civil Procedure 4.2 and the Hague Service

---

[1]      We declined to review the superior court's rulings on motions to dismiss for lack of personal jurisdiction and subject matter jurisdiction. Of the Six Defendants, one corporation (Juegos de Entretenimiento y Videos de Monterrey) is not a Petitioner here. The Petitioners are the other Six Defendants and Guadalupe Recreation Holdings, L.L.C.

4

Convention. Rule 4.2(i)(1) generally provides that service may be effected outside the United States on individuals by any internationally agreed means reasonably calculated to give notice, such as the means authorized by the Convention. A court may also direct service "by other means not prohibited by international agreement." Ariz. R. Civ. P. 4.2(i)(3). Rule 4.2(k) contains similar provisions for service abroad on corporations or partnerships and other unincorporated associations. Thus, if the Convention applies, its provisions determine whether the superior court properly ordered alternative service.

¶7 The Convention is a multilateral treaty formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). The United States ratified the Convention without reservation in 1967. *Id.;* Hague Service Convention, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Although Mexico was not an original signatory, it acceded to the Convention in 1999 by depositing an instrument of accession with the Ministry of Foreign Affairs of the Netherlands. *See* Hague Service Convention at art. 28; Accession (with Declarations) of Mexico to the Hague Service Convention, 2117 U.N.T.S. 318 (2000).

¶8 The Convention seeks "to provide a simpler way to

5

serve process abroad, to assure that defendants sued in foreign jurisdictions . . . receive actual and timely notice of suit, and to facilitate proof of service abroad." *Schlunk*, 486 U.S. at 698. Broad in scope, the Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention at art. 1. The Convention does not apply, however, "where the address of the person to be served with the document is not known." *Id.*

¶9 The Convention requires each contracting state to establish a central authority to "receive requests for service coming from other contracting [s]tates." *Id.* at art. 2. Once a central authority receives a request for service that complies with the Convention, it must "itself serve the document" or "arrange to have it served by an appropriate agency." *Id.* at arts. 3, 5. The central authority then provides the applicant with a certificate identifying how the document was served or the reasons that prevented service. *Id.* at art. 6. Through these procedures, "[t]he Convention provides simple and certain means by which to serve process on a foreign national." *Schlunk*, 486 U.S. at 706. Complying with the Convention may also facilitate subsequent efforts by parties to enforce their judgments abroad. *Id.*

¶10 The Convention also contemplates certain alternative

6

means of service under Article 8, which allows service through a state's diplomatic or consular agents, and Article 10, which allows judicial documents to be sent directly to persons abroad via postal channels or by personal service "through the judicial officers, officials, or other competent persons of the [s]tate of destination." Hague Service Convention at arts. 8, 10. Significantly, the Convention permits a contracting state to object to the alternative means of transmission provided in Article 8 (except as concerns service on a national of the state in which the documents originate) and Article 10. *Id.; see also id*. at art. 21 (allowing each contracting state to inform the Dutch Ministry of Foreign Affairs of any "opposition to the use of methods of transmission pursuant to articles 8 and 10").

¶11      Mexico has objected to these alternative methods of service. Its instrument of accession, which includes declarations clarifying Mexico's position with respect to various articles of the Convention, opposes service to persons in Mexican territory under Articles 8 and 10. Accession (with Declarations) of Mexico, 2117 U.N.T.S. at 319 ¶¶ IV, V. Thus, service through Mexico's central authority, its Ministry of Foreign Affairs, is the exclusive means by which service may be accomplished in Mexico. *See* Restatement (Third) of Foreign Relations Law § 471 cmt. e (1987) ("[F]or states that have objected to all of the alternative methods, service through the

7

Central Authority is in effect the exclusive means.").[2]

¶12    Some confusion has nevertheless arisen regarding Mexico's reservations against the use of alternative service. When Mexico deposited its instrument of accession, the Dutch Ministry requested either an English or French translation of Mexico's Spanish declarations for distribution to the other contracting states.    Charles B. Campbell, *No Sirve: The Invalidity of Service of Process Abroad by Mail or Private Process Server on Parties in Mexico Under the Hague Service Convention*, 19 Minn. J. Int'l L. 107, 121 n.69 (2010).    Mexico provided the Ministry with an English "courtesy translation" that mistranslated Mexico's objection to Article 10 as:   "[T]he United Mexican States are opposed to the direct service of documents *through diplomatic or consular agents* to persons in Mexican territory according to the procedures described in sub-paragraphs a), b) and c)."   English Courtesy Translation of Accession (with Declarations) of Mexico to the Hague Service Convention, 2117 U.N.T.S. 318, 321 ¶ V (2000) (emphasis added).

¶13    This mistranslation, which erroneously inserts the modifier "through diplomatic or consular agents" into the

---

[2]    Mexico's accession to the Convention does recognize that, after its Ministry of Foreign Affairs forwards documents to an appropriate Mexican judicial authority, the judicial authority may use simplified procedures to effect service in certain circumstances.   *See* Accession (with Declarations) of Mexico, 2117 U.N.T.S. at 319 ¶ V.

original Spanish version, has caused some U.S. courts and agencies to conclude that Mexico objects to alternative methods of service only when attempted through diplomatic or consular agents. *See, e.g.*, *UNITE Nat'l Ret. Fund v. Ariela, Inc.*, 643 F. Supp. 2d 328, 333-34 (S.D.N.Y. 2008) (relying on "courtesy translation" and concluding that because Mexico's Article 10 declaration "restricts its objection to service through 'diplomatic or consular agents,'" Mexico's declaration "does not expressly prohibit or object to service via postal channels"); U.S. Dep't of State, Circular: International Judicial Assistance Mexico (advising that service may be accomplished in Mexico by international registered mail because "no provision in Mexic[an] law specifically prohibit[s]" such service).[3]

¶14    The English "courtesy translation" was not Mexico's instrument of accession, but was submitted so that the Dutch Ministry could transmit a depositary notification of Mexico's accession to the other contracting states. Campbell, *supra*, at 120-21. Mexico's President signed, and its Senate ratified, the instrument of accession in Spanish, making these Spanish

---

[3]    *Available at* http://web.archive.org/web/20080328041048/http://travel.state.gov/law/info/judicial/judicial_677.html (last visited July 21, 2010); *revised* October 2009 to state "[w]hile cases have been reported where U.S. courts have accepted alternative methods of service, Mexico's accession to the Hague Service Convention indicates that service through the Mexico Central Authority is the exclusive method available." *Available at* http://travel.state.gov/law/judicial/judicial_677.html (last visited July 21, 2010).

9

declarations evidence of Mexico's intent to disallow alternative service. *Id.* at 120-21, 126-27 & n.87; *see also Schlunk*, 486 U.S. at 700 (noting that to ascertain the meaning of treaties, courts "may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties"). We also note that the reference to service "through diplomatic or consular agents" in the English "courtesy translation" of Mexico's objections to Article 10 is somewhat anomalous on its face, inasmuch as Article 10, unlike Article 8, does not concern service through diplomatic or consular officials.

¶15    The original Spanish declaration, not the English "courtesy translation," expresses the intent and determines the terms of Mexico's accession to the Convention. *Cf. Todok v. Union State Bank*, 281 U.S. 449, 454 (1930) (stating that for a treaty ratified in French, the French text, not the English translation, controlled). Compliance with the Convention, as acceded to by Mexico, is "mandatory in all cases to which it applies." *Schlunk*, 486 U.S. at 699, 705 ("By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law."); *see also Kadota v. Hosogai*, 125 Ariz. 131, 134, 608 P.2d 68, 71 (App. 1980) ("Arizona cannot attempt to exercise jurisdiction under a rule promulgated by its courts if that rule would

violate an international treaty.").

¶16       Mexico's blanket objection to any alternative methods of service under Articles 8 and 10 renders service through its Ministry of Foreign Affairs the exclusive means available under the Convention.    When the Convention applies, alternative service in Mexico through postal channels and email is prohibited, and the superior court erred in ruling otherwise. We recognize that this error may have resulted from the combination of the English mistranslation of Mexico's declarations and the U.S. State Department circular, not revised until after the superior court's ruling, which mistakenly indicated that service may be effected in Mexico by registered mail.

¶17       The Tribe acknowledges that it has not attempted service through Mexico's Ministry of Foreign Affairs but contends that it has nonetheless validly effected service.    The Tribe first argues that the Convention does not apply because Mexican addresses for the Six Defendants are not known. Moreover, noting that the Convention does not determine the validity of service on foreign defendants within the United States, *see Schlunk*, 468 U.S. at 707, the Tribe contends that service was validly effected domestically on either Arturo Rojas Cardona or the attorneys for the Six Defendants, and these persons were authorized to receive service of process on behalf

11

of the other defendants.  We do not reach these arguments, which may be considered in the first instance by the superior court on remand.

### III.

**¶18**     For the foregoing reasons, we vacate the superior court's order denying the Six Defendants' motion to dismiss for insufficiency of service of process and remand for further proceedings consistent with this opinion.


_____
                    W. Scott Bales, Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
A. John Pelander, Justice