NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of:

JOAN LYNN MORRISON TRUST UNDER ARTICLE 9

JP MORGAN CHASE BANK NA, *Petitioner/Appellee*,

*v.*

CHARLES ADAMS, *Respondent/Appellant*.

No. 1 CA-CV 19-0712
FILED 1-12-2021

Appeal from the Superior Court in Maricopa County
No. PB 2019-000145
The Honorable Thomas L. Marquoit, Judge *Pro Tempore*

**AFFIRMED**

APPEARANCES

Charles Adams, Tijuana BC
*Respondent/Appellant*

Allison Law Office PLLC, Phoenix
By Sondri Allison
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Acting Presiding Judge David B. Gass and Judge Lawrence F. Winthrop joined.

---

**B R O W N**, Judge:

**¶1**        Charles Adams appeals the superior court's order denying his motion to set aside a release of liability granted in favor of JP Morgan Chase Bank ("Chase").  For the following reasons, we affirm.

## BACKGROUND

**¶2**        Adams is one of the beneficiaries of the Joan Lynn Morrison Trust ("Trust"), established in 1982.  Chase is the trustee.  On February 12, 2019, Chase filed a petition for release of liability in connection with its administration of the Trust, dating from the Trust's inception through December 2018.  According to its proof of mailing, Chase sent copies of the petition by first class mail on February 15, 2019, to "the interested persons set forth in Exhibit 'A'" along with a notice stating a hearing would be held in the superior court on March 19, 2019.  Adams was included in Exhibit A and his address was listed as a Post Office Box ("P.O. Box") in Tijuana, Mexico.  Chase also mailed notice to Derrick Hahn, a Texas attorney who had previously represented Adams.

**¶3**        According to the superior court's minute entry, at the scheduled hearing a Trust officer testified she had not received any objections to the petition and counsel for Chase avowed that notice was given to all interested parties.  The court issued an order granting the petition.

**¶4**        About two weeks later, Adams filed a motion to set aside the order under Arizona Rule of Civil Procedure ("Rule") 60(b) (1) and (6).  He asserted Chase violated the terms of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), and the notice provisions of the probate code "potentially" violate due process.  Adams also argued relief from judgment was appropriate under Rule 60 because he never actually received notice at his P.O. Box.  In response, Chase contended it gave proper notice to Adams under A.R.S. § 14-10109 and used the only method of contact available.

2

¶5         Following oral argument, the superior court denied the motion to set aside, finding Chase complied with notice requirements under § 14-10109, and relief was not warranted under Rule 60(b) because Chase used the method of contact Adams expressly preferred. As the court explained, "[i]n light of Mr. Adams'[s] own correspondence on the topic of what his mailing address actually is, the Court does not agree with the argument that Chase should not have abided by his wishes." The court also determined the service requirements of the Hague Convention were inapplicable. Adams appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(2).

**DISCUSSION**

¶6         Under the Arizona Trust Code, a trustee may file a petition for release of liability. *See* A.R.S. § 14-10201(A) ("The court may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person . . . ."); § 14-10201(C) ("A judicial proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions and an action to declare rights."). Notice of such a petition "must be accomplished in a manner reasonably suitable under the circumstances and likely to result in the receipt of the document." A.R.S. § 14-10109(A). Additionally, "[n]otice of a judicial proceeding must be given pursuant to § 14-1401." § 14-10109(D). A petitioner can satisfy § 14-1401 by sending a copy of the notice of hearing through first class mail at least 14 days before the hearing. A.R.S. § 14-1401(A)(1).

¶7         The superior court found Chase complied with all statutory notice requirements, and Adams does not challenge that finding on appeal. Nonetheless, Adams argues the court erred in denying his Rule 60(b) motion because: (1) the notice Chase provided did not comply with due process; (2) relief from judgment is appropriate as excusable neglect under Rule 60(b)(1); (3) relief is appropriate under Rule 60(b)(6); and (4) the judgment must be set aside because notice did not comply with the Hague Convention on international service.

**A.     Due Process**

¶8         As an initial matter, Adams has not filed transcripts of the hearings on the petition for release of liability or the oral argument on his Rule 60(b) motion. Because we do not have the transcripts, to the extent any of the issues Adams raises on appeal relate to what was presented at the petition hearing or oral argument on the Rule 60(b) motion, we presume

those proceedings support the superior court's ruling. *See Ashton-Blair v. Merrill*, 187 Ariz. 315, 317 (App. 1996) ("As to matters not in our record, we presume that the record before the superior court supported its decision."). Though Chase included what appears to be several pages of a transcript relating to an oral argument in an appendix to its answering brief, we will not consider those pages. Transcripts do not become part of the record on appeal by merely including excerpts in an appendix; certified transcripts must be filed under ARCAP 11. *See In re Property Located at 6757 S. Burcham Ave.*, 204 Ariz. 401, 404–05, ¶ 11 (App. 2003).

**¶9** Adams argues Chase's attempt at notice did not comply with due process under the United States Constitution, voiding the release of liability. This court reviews constitutional claims de novo. *In re Estate of Snure*, 234 Ariz. 203, 204, ¶ 5 (App. 2014). We also review de novo claims that an underlying judgment is void and should be set aside pursuant Rule 60(b)(4). *See BYS Inc. v. Smoudi*, 228 Ariz. 573, 578, ¶ 18 (App. 2012).

**¶10** Constitutional due process ensures individuals affected by a legal proceeding have a meaningful opportunity to be heard. *See City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999). For notice to be sufficient, it "must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Further, a "mere gesture is not due process," and "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315.

**¶11** Adams contends that Chase's attempt at notice was a "mere gesture." He relies on statements made in a letter from a Chase officer referencing "delays and returned mail issues occasioned in the past" when sending Adams mail to his P.O. Box. Adams also argues the United States Postal Service offers expedited delivery with confirmation through FedEx Express. Though not mentioned in the superior court, he directs us to the U.S. Postal Service website, which calls this expedited service Global Express Guaranteed ("GXG"). *Global Express Guaranteed*, USPS, https://www.usps.com/international/gxg.htm (last visited Dec. 30, 2020). Adams contends that because Chase relied on an unreliable method of delivery when a reasonably priced, more reliable option was available, Chase's attempts at notice were not designed to achieve actual notice and a meaningful opportunity to be heard. Thus, Adams asserts the judgment is void and must be vacated under Rule 60(b)(4). *See* Rule 60(b)(4) (stating that the judgment may be set aside if the judgment is void).

¶12  Although Chase expressed concerns over using Adams's P.O. Box, it occurred in the context of a letter warning Adams about potential privacy issues. Chase also asked Adams to provide a phone number where he could be reached. Adams responded, asserting in part that "[t]he time it takes for mail from United States to my address in Mexico is normal, regarding the returned mail, (non issue), in the 19 years that I had this address, the mail has been no issue. . . . I reiterate, the[re] is no issue with mailing." He did not provide a phone number. Given Adams's directive to Chase that it send communications to him through his P.O. Box, Chase's acquiescence to Adams's preferred (and only) method of communication was not a mere gesture. And as Chase points out, the United States Postal Service lists countries that accept P.O. Boxes for GXG service. *Countries that Accept P.O. Box Addresses for Global Express Guaranteed Service*, USPS, https://about.usps.com/publications/pub141/html/section2PostalCodes List1.html (last visited, Dec. 30, 2020). Mexico is not on that list.

¶13  In his reply brief, Adams makes various factual assertions but does not show where those matters were presented to the superior court. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000) (appellate courts generally do not consider issues raised for the first time on appeal). Waiver aside, the assertions made in the reply brief are not persuasive. For example, Adams argues Chase could have used a service called FedEx(rush) and claims Chase has used this service before when mailing him bank cards. Regardless, he does not explain how the service would have been more reliable given Chase would still be sending notice to the same P.O. Box. Adams also argues that when he stated he preferred to be reached at his P.O. Box, he only meant this method was sufficient for delivery of trust documents, and he did not mean it was sufficient as a means of receiving notice for court proceedings. Because Chase sent notice by the only means it had available, in furtherance of Adams's explicit instructions and in compliance with Arizona's probate statutes, we conclude Chase's attempts to notify Adams complied with due process.

### B. Rule 60(b)(1) Motion

¶14  Alternatively, Adams argues the judgment should be set aside under Rule 60(b)(1), which states the court may set a judgment aside based on "mistake, inadvertence, surprise, or excusable neglect." Generally, a denial of a Rule 60 motion is reviewed for "clear abuse of discretion." *Ezell v. Quon*, 224 Ariz. 532, 536, ¶ 15 (App. 2010). When a party requests that the court set aside a judgment pursuant to Rule 60(b)(1), the party must show that it sought relief from the judgment promptly, the

failure to timely respond was excusable, and a meritorious defense exists. *Daou v. Harris*, 139 Ariz. 353, 358–59 (1984); *BYS Inc.*, 228 Ariz. at 577, ¶ 14.

¶15 "The general test of what is excusable is whether the neglect or inadvertence is such as might be the act of a reasonably prudent person under the same circumstances." *Coconino Pulp & Paper Co. v. Marvin*, 83 Ariz. 117, 120 (1957). The moving party must show "facts sufficient to demonstrate that the neglect is excusable, not merely unexplained." *Master Fin., Inc. v. Woodburn*, 208 Ariz. 70, 74, ¶ 18 (App. 2004).

¶16 Adams contends his failure to appear is excusable because the delay was caused by Chase, reiterating his contention that Chase did not use an adequate means of notification when it sent the notice of the petition for liability to Adams's P.O. Box. As the superior court explained, Adams insisted in his correspondence with Chase that Chase continue to send all mail, including trust statements, to his P.O. Box. The court reasoned that "[i]n light of Mr. Adams'[s] own correspondence on the topic of what his mailing address actually is, the Court does not agree with the argument that Chase should not have abided by his wishes." We find no abuse of discretion.

¶17 Adams also argues his lack of notice of the proceeding is sufficient, on its own, to find excusable neglect under Rule 60(b)(1). To support his proposition, he cites *Obermaier v. Fix*, 25 A.D.3d 327 (N.Y. App. Div. 2006). In *Obermaier*, the defendant testified he was out of the country at the time of service. *Id.* at 327. The trial court found it was a justifiable excuse, and the appellate court affirmed. *Id.* Unlike that case, Adams did not even allege, much less provide testimony or other proof, that he lacked access to his P.O. Box during the time when Chase sent the letter through the date the hearing was held. The superior court did not abuse its discretion when it found Adams did not have a justifiable excuse under Rule 60(b)(1). Accordingly, we do not address whether Adams had a meritorious defense.

### C. Rule 60(b)(6)

¶18 Adams argues that relief was appropriate under Rule 60(b)(6), which authorizes a court to vacate a judgment for "any other reason justifying relief" from the operation of judgment. To obtain relief under this rule, "the movant must show 1) extraordinary circumstances of hardship or injustice justifying relief and 2) a reason for setting aside the judgment other than one of the reasons set forth in the preceding five clauses." *Davis v. Davis*, 143 Ariz. 54, 57 (1984). The movant must also

assert a meritorious defense. *Gonzalez v. Nguyen*, 243 Ariz. 531, 534, ¶ 12 (2018).

**¶19** Adams argues the totality of the facts and circumstances justify relief. He reiterates his position that Chase employed an unreliable method of notification by mailing notice of the petition to his P.O. Box. He also contends that releasing Chase from liability would allow it to "achieve[] an end run around the . . . statutes of limitation" because it would shorten the limitation period to less than four months.

**¶20** The superior court denied relief under Rule 60(b)(6) for the same reason it denied relief under Rule 60(b)(1): Chase had no other option but to send notice to Adams's P.O. Box, as this was the only method of contact Adams made available. We agree with the superior court. No "extraordinary hardship" or "injustice" occurred because Chase employed Adams's preferred method of communication.

**¶21** As for Adams's argument that the release of liability is an end-run around the statute of limitations, it relates only to the merits of the case. Assuming without deciding that Adams does have a meritorious defense, that alone is not enough to justify relief under Rule 60(b)(6). The superior court acted within its discretion when it denied relief under Rule 60(b)(6).

### D. Hague Convention

**¶22** Finally, Adams argues the release of liability order is void because Chase did not comply with the Hague Convention, which is a United States treaty. The Hague Convention therefore "pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). It governs service of process in foreign countries, and applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Under the terms of Mexico's accession to the treaty, service through Mexico's Central Authority is the exclusive means of service under the Hague Convention. *Cardona v. Kreamer*, 225 Ariz. 143, 145, ¶ 5 (2010).[1] But the Hague

---

[1] Each participating country designates a "Central Authority" that is responsible for receiving foreign service requests. Hague Convention art. 2. Currently, Mexico's Central Authority is the Directorate-General for Legal Affairs of the Ministry of Foreign Affairs. *See Declarations*, HCCH,

Convention does "not apply where the address of the person to be served with the document is not known." Hague Convention art. 1. Applying this provision, the superior court held that because Chase had no knowledge of Adams's physical address, the Hague Convention did not apply.

¶23            Adams argues the Hague Convention does not require a physical address and a known P.O. Box is enough to trigger Hague Convention requirements. To support this argument, Adams points out that the model form found on the Hague Convention website does not explicitly require a physical address. *See Model Form Annexed to Convention*, HCCH, https://www.hcch.net/en/publications-and-studies/details4/?pid=6560 (last visited Dec. 30, 2020). Further, the guidelines for completing the model form published on the Hague Convention website do not direct applicants to use only a physical address. *See id.* Adams also asserts that no caselaw supports the proposition that a physical address is required.

¶24            We are not persuaded. When serving a party through a foreign state's Central Authority, the "Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency." Hague Convention art. 5. The Central Authority then prepares a certificate "that the document has been served and shall include the method, the place and the date of service *and the person to whom the document was delivered*." *Id.* at art. 6 (emphasis added). Given that wording, the Hague Convention contemplates personal service upon the individual residing in the foreign state. This supports the superior court's conclusion that a physical address is required for purposes of service under the Hague Convention. Moreover, Adams does not present any evidence or argument suggesting Mexico's Central Authority would accept a P.O. Box on an application under the Hague Convention. The superior court did not err when it found that the Hague Convention was not applicable.

## CONCLUSION

¶25            We affirm the superior court's order. Both parties request attorneys' fees and costs under A.R.S. § 14–11004(B), which provides that a court may order a party's reasonable fees and expenses be paid "by any

---

https://www.hcch.net/en/states/authorities/notifications/?csid=412&disp=resdn (last visited Dec. 30, 2020). Mexico's objection to alternative methods of service under Articles 8 and 10 render service through its central authority as the exclusive means of service under the Hague Convention. *Cardona*, 225 Ariz. at 147, ¶ 16.

other party or the trust that is the subject of the judicial proceeding." Chase also requests attorneys' fees under A.R.S. §12-349. In our discretion, we deny both parties' requests for attorneys' fees. As the successful party on appeal, Chase is awarded taxable costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA